**FOREMOST CONSTRUCTION COMPANY, a Corporation, Plaintiff-Appellant,**

v.

**Mary Jane KILLAM and Liberty Bank of Honolulu, Defendant Third-Party Plaintiffs-Respondents,**

v.

**KANSAS CITY TITLE INSURANCE COMPANY, Third-Party Defendant Appellant.**

Nos. 24283, 24284.

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1966.

Thomas M. Sullivan, Downey, Sullivan & McCormick, Kansas City, for plaintiff-

appellant and for third-party defendant-appellant.

R. B. Miller, Jr., John R. Moore, Platte City, for respondents.

SPERRY, Commissioner.

This suit in equity was brought for the purpose of cancelling a deed of trust.

Plaintiff, Foremost Construction Company, a corporation, sued Mary Jane Killam for damages growing out of an alleged breach of warranty on a tract of land conveyed by her to plaintiff's grantor. Liberty Bank of Honolulu was also named as a defendant because it had acquired from defendant an interest in the note and deed of trust given to defendant as purchase price. The suit is bottomed on the fact that there were unpaid special taxes outstanding against the land when it was transferred to plaintiff. Such taxes were, eventually, settled fully by Title Company paying Kansas City the sum of $5,145.89.

Defendant and Liberty Bank of Honolulu, hereafter named as Bank, brought Kansas City Title Insurance Company, hereafter known as Title Company, and Clay County Abstract Company, hereafter referred to as Abstract Company, into the case as third-party defendants, on the theory that Title Company, through its agent, Abstract Company, had issued its mortgagee's insurance policy to defendant, insuring her against this loss. The judgment was for defendant on plaintiff's petition, and for defendant-third party plaintiff, on her claim, against Title Company, for attorney's fees, in the amount of $3,750.00. Plaintiff and Title Company appeal.

Defendant received title to the land here involved, located in Clay County, Kansas City, Missouri, under the will of her deceased uncle, June 28th, 1958. She was and is a resident of Honolulu, Hawaii. She sold and conveyed the land to J. A. Peterson Investment Company, a corporation, on or about December 21st, 1959, for $30,000.00, conveying it by general warranty deed. As a part of the purchase price she received a note and deed of trust in the amount of $21,500.00. The trial court found that, as of December 31, 1962, the balance due on the note was $8,180.00.

As a part of the sale contract between defendant and Peterson defendant furnished the buyer a title insurance policy for which she paid Title Company a premium; and Peterson furnished to defendant, at its expense, a mortgagee's Title Insurance Policy, through Title Company, covering her note and deed of trust. Thereafter, Peterson transferred the property to plaintiff by general warranty deed, subject to the mortgage.

At the time the sale contract was entered into there were a number of special tax bills outstanding affecting the property, which consisted of approximately twenty-five (25) acres of undeveloped land. Kansas City had extended sewer lines into the property and had assessed park improvement taxes against some portions of it.

Defendant-third party plaintiff testified to the effect that she received actual title to the property, after probate had ended, in May, 1959; that she then went to the city treasurer's office to inquire about special taxes levied against it; that, on her first such visit, she learned nothing because Mrs. Sportsman, who had charge of that department, was not there; that, later she went back and Mrs. Sportsman gave her three paper slips and told her that they showed the special taxes against the property; that each of the slips had figures showing the amount of tax due thereon; that, shortly thereafter, she again visited the tax office to inquire as to whether she could pay the taxes in installments; that she also inquired about special taxes that might accrue in the future, was shown maps in the engineer's office, and was informed that, within a year, additional special taxes to the extent of $10,000.00 would likely be levied; that she then decided to sell the land; that she wanted to realize a net of $1,000.00 per acre, above taxes and other expenses; that, in August, 1959, she met in her attorney's office, together with a

real estate agent and a representative of Peterson; that her attorney listed all of the taxes and other expenses of which he had knowledge, which would be paid from the proceeds of the sale price; that she signed the sale contract in the belief that she would receive about $1,000.00 per acre for the land after deduction of all taxes and expenses. Mr. Davidson, her attorney at that time, testified and corroborated her testimony in this regard. The known taxes and expenses were considered in arriving at the sale price and were part of the price of the sale.

Defendant identified her Exhibit Y as being the mortgagee's title insurance policy, issued to her by Title Company, through its agent, Abstract Company.

. Mrs. Sportsman, a clerk in the Kansas City treasurer's office, testified to the effect that she has charge of special tax accounts for the City, which are kept separate from general taxes. She identified the three exhibits, one as being evidence of the special park taxes here involved, having been assessed February 27th, 1959, and the remaining two as sewer tax bills issued August 31st, 1958. All of the taxes were payable at the time the real estate herein was transferred to Peterson, and when later transferred to plaintiff by Peterson. These are the taxes giving rise to this litigation. She stated that defendant came to her office several times in September, of 1959, and asked for a statement in full of special taxes on the Winn property; that she gave her three such statements. (The statements in evidence were paid in full on December 28th, 1962, by Title Company).

There was uncontradicted testimony from a number of tax experts, employees of Title Company, Abstract Company, and officials of Kansas City, that none of the tax statements here involved were found, or could have been found, in the offices where they legally should have been at the time the land was transferred by defendant, and not until long afterward; that they were improperly indexed, that Title Company experts searched the title for taxes at least three times and failed to find them. There is no evidence whatever tending to prove that defendant had any knowledge of the existence of these particular tax items until she was informed thereof shortly prior to the institution of this suit against her. The testimony of Mrs. Sportsman is inaccurate as to the time when defendant visited her office because it is not disputed that defendant left Missouri and went back to Hawaii, in August, 1959. Mrs. Sportsman must have been in error as to having given these particular statements to defendant (although defendant says she did give her two or three statements of special taxes). Mrs. Sportsman could scarcely have delivered copies of *these* statements to defendant at a time when, by the overwhelming weight of the evidence, they were not in her office but were lost somewhere in the vaults in the catacombs of City Hall, concealed under an anonymous or mislabeled file, only to be brought to the light of day nearly three years later when some unnamed city official declined to issue building or sewer permits on some of this property because there were unpaid special taxes thereon.

When they were discovered it was shown by the overwhelming weight of the evidence that they had never been signed or "certified" by the proper city official, as required by the Kansas City Charter. The trial court held that, by reason of that fact, they never became liens on the real estate here involved. However, we will not discuss that feature of the case because it is clear that, whether or not they constituted liens within the meaning of the applicable law, Title Company had, by its mortgagee's policy, insured defendant against any and all claims based on these taxes.

The policy contains the following language applicable in this situation, to-wit:

"2. The Company at its own cost shall without undue delay defend the Insured in all litigation consisting of ac-

tions or proceedings commenced against insured, * * * which litigation is founded upon a defect, lien, or encumbrance insured against by this Policy, * * * ".

* * * * * *

"8. * * * The Company will not be liable for loss or damage by reason of defects, claims, or incumbrances created subsequent to the date hereof (excepting any statutory lien for labor or material insured against by this Policy) or for defects, claims or encumbrances *created* or *suffered* by the Insured claiming such loss or damage, *or existing at the date of this Policy and known to the insured claiming such loss* or damage *at the date such Insured claimant acquired insurable interest but not known to the Company* or disclosed to it in writing by the insured. * * * ". (Emphasis ours).

■ By the above language of the policy Title Company insured defendant against all claims founded on a defect, lien or encumbrance except such claims as are founded on defects, claims, or encumbrances *created* or *suffered* by *defendant;* (these claims were not created or suffered by defendant, they were created by law and existed before she received title); and those existing at the date the policy was issued (as these were) *unless* they were *known* to defendant at the time the insured acquired title and *not known to Title Company.* There is no substantial evidence tending to prove that Mrs. Killam ever had any personal knowledge of the existence of these particular claims. She had general information to the effect that sewers and parks were being constructed all over Clay County, and that some would likely affect her land. She made inquiry thereabout and learned of three such special tax claims. All tax claims that she or her attorney, or Peterson, or Abstract Company or Title Company, ever learned about were paid by her when the sale herein was finally consummated. This case was

well contested. The trial court heard the evidence and found for defendant on the issue of her knowledge of the claims. We not only approve of that finding but hold that it is supported by the preponderance of the evidence. Defendant's right to recover is not affected by record defects, at least, unless she had personal knowledge of same. Research Loan and Investment Company v. Lawyer's Title Insurance Corporation, D.C., 225 F.Supp. 287, 289 et seq.

In ruling this appeal we have not cited legal authorities for the reason that our decision is based solely on the meaning of the language chosen by Title Company to define its obligation. That language is plain and clear. There is no room here for involved construction or interpretation. Title Company is bound to protect its insured against these claims unless they are plainly excluded by the terms of the policy herein above quoted.

■ "* * * [P]rovisions limiting or cutting down, or avoiding liability in the coverage made in the policy are construed most strongly against the insurer. * * * ". State Farm Mutual Automobile Insurance Company v. Mid-Continent Casualty Company, 378 S.W.2d 232, 235 (Mo. App.) The burden of proof is on the insurer to bring itself within the terms of the exclusionary clause. This it did not do.

The record here shows that Title Company issued its policy to defendant whereby it contracted to defend her against all claims except such as were specifically excluded. When these taxes came to light Peterson, who held Title Company's policy of guaranty, brought the matter to the attention of insurer. Instead of protecting defendant, as was its obligation, it paid the tax claims and procured plaintiff to institute this suit against its own insured, guaranteeing plaintiff that Title Company would hold it harmless in any event. Its conduct in this respect does not add to its lustre, but we are powerless to do more than rule the questions of law presented to us.

■ The trial judge allowed defendant third party plaintiff $3,750.00 attorney fees against third party defendant, on her claim therefor. She asks for an additional allowance. Six court days were consumed in the trial of this case. The transcript consists of almost seven hundred (700) pages. There were scores of exhibits. A vast amount of time was required of defense counsel to search out the evidence and prepare the case for trial. Title Company was bound by its contract to defend this action at its cost. Shaver v. National Title & Abstract Company, 361 S.W.2d 867, 871, 98 A.L.R.2d 531 (Tex.). Since it refused to defend this action it is liable to Mrs. Killam for such breach.

■ We find that defendant-third party plaintiff is entitled to recover from third party defendant, Title Company, the full sum of $4,250.00 as and for her attorney fees herein.

■ Defendant asks for an allowance to defray the costs of briefing and attorney fees on this appeal. This request must be denied. Jourdan v. Jourdan, 251 S.W.2d 380, 384 (Mo.App.).

The judgment is modified in accordance with our finding that defendant third party, Killam, is entitled to receive from Title Company the sum of $4,250.00 as and for her attorney's fees in the trial court. As modified the judgment is affirmed and the cause remanded with directions that the trial court enter a new judgment in conformity herewith.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

CROSS, P. J., HOWARD and BLAIR, JJ., and BROADDUS, Special Commissioner, concur.