LAABS and another, Respondents, v. CHICAGO TITLE INSURANCE COMPANY, Appellant.

*No. 568 (1974). Argued April 12, 1976.—Decided May 4, 1976.*
(Also reported in 241 N. W. 2d 434.)

For the appellant there was a brief by *O'Melia, Melby, Simon & Smith, S. C.*, and a reply brief by *O'Melia, Melby, Smith & Schiek, S. C.*, of Rhinelander, and oral argument by *David J. Smith*.

For the respondents there was a brief by *Timken, Lonsdorf & Mallery* and oral argument by *James P. Lonsdorf*, all of Wausau.

CONNOR T. HANSEN, J. This litigation arises from a dispute as to the scope of coverage provided by a policy of title insurance issued by Chicago Title Insurance Company (hereinafter company) to Theodore F. and Selma Laabs (hereinafter insured). Laabs and McKenzies owned adjoining parcels of real estate. The company had issued a policy of title insurance to both property owners. The two properties are described by metes and bounds and it appears the descriptions overlap. The property described in Laabs' deed is located partially in government lots four and five. It also appears that the scrivner who prepared the description to the Laabs real estate made no reference to government lot five in the description. The result was that the Laabs' deed was not indexed in the tract index under government lot five.

The insured commenced a quiet title action against McKenzies and others claiming ownership of the disputed portion. The defendants in that action answered and counterclaimed against the insured. The insured notified the company of the counterclaim, requesting representation in accordance with the terms of the insurance policy. However, the company refused to defend on the ground that the dispute fell within certain exceptions to coverage contained in the policy.

The insured then instituted this action against the company. Trial on this action was held; however, pursuant to stipulation, the trial court postponed determination on the issue of policy coverage until after trial of the quiet title action.

At the conclusion of the quiet title action, the trial court determined that the disputed parcel belonged to the defendants in that action and not the Laabs. Because of this determination, the status of the other defendants is not pertinent to this appeal. It was also determined that the dispute was of such nature as to be within the scope of coverage of the title insurance policy issued by the company. Therefore, judgment was entered against the company for the reasonable value of the disputed property, and for reasonable attorney fees and costs incurred by the insured in the trial of the counterclaim in the quiet title action. The amount of the damages is not an issue on this appeal.

The findings of fact and conclusions of law and the judgment are captioned as in the instant action. The opinion of the trial judge is captioned as in the action to quiet title. All three of these documents are included in the record and address the issue raised in this action.

The company appeals from that portion of the judgment finding it liable to the insured for the value of the disputed parcel of land and for trial-related costs. Following transmittal of the appeal record, the insured moved this court to strike certain portions of the record. Those portions had to do with an action on a policy of title insurance issued by the company to the McKenzies. The insured herein was not a party to that action. The company did not oppose the motion. This court granted the motion, ordering that the trial court's findings of fact and conclusions of law and opinion in that action, as well as the adverse examination of McKenzie in relation to that action, be stricken from the record.

Determination of a single issue will be dispositive of this appeal:

Was the trial court in error in determining that the policy of title insurance issued by the company included within its coverage the loss sustained by the insured? We are of the opinion that the trial court was correct in its determination.

The company contends that several exceptions and conditions contained in the policy should relieve it of liability for payments to the insured.

The policy of title insurance contains the following language in its Exclusions from Coverage:

"The following matters are expressly excluded from the coverage of this policy:

". . .

"3. Defects, liens, encumbrances, adverse claims, or other matters . . . (b) not known to the Company *and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured* by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; . . . ." (Emphasis added.)

The company argues that the dispute and defect were known to the insured prior to the policy date and, therefore, the company is not liable for the loss or for defense costs. The company bases this argument on the decision of the trial court in the action between the McKenzies and the company. There it was apparently found that the company was not liable to the McKenzies in any way because the McKenzies were aware of the dispute with the insured when they applied for their policy. By order of this court, that opinion and the accompanying transcript of McKenzies' adverse examination are no longer part of the record herein and cannot be considered in reaching a determination on this issue. However, as the

company observes, other testimony in support of its claim is preserved in the transcript of the quiet title action.

During that trial, the McKenzies' predecessor in title, Mrs. Yunk, testified that she had disputes in 1962 and 1966 with the insured over the parcel of land in question, that a fence had been placed along the disputed boundary line, and that she had torn it down. A neighbor of the parties testified that in 1965 or 1966, he had observed the insured placing a fence along a portion of the disputed parcel and called the Yunks to inform them of the matter. Finally, Mr. McKenzie, who was not called to testify at the trial on policy coverage, testified that approximately two weeks after he purchased his property, he encountered the insured on the disputed parcel at which time he was informed by Mrs. Laabs that he was trespassing, that he had purchased something that belonged to insured and that the amount of land purchased had been misrepresented to him. This was approximately one week prior to the date insured's policy was issued.

With respect to these matters, the insured testified at the trial on policy coverage that she had no knowledge of any dispute with the Yunks, that she had not spoken with the McKenzies prior to the time they began clearing the disputed parcel, and that she applied for the title insurance with a view toward selling the property. She confirmed this testimony at the trial on the quiet title action. She testified further that she and her husband continued to build a fence along the disputed parcel, a portion of which had been begun as far back as 1947 and 1948, and that it had been removed, although she did not know who had removed it. Her brother-in-law, a real estate broker, testified that he had advised her that if she wished to sell the property, she should obtain title insurance. This advice was not given, however, in connection with knowledge of any dispute, but rather be-

cause he felt that any prospective purchaser would impose such a requirement.

The company, in its policy, excluded from coverage defects and adverse claims not shown by the public record and not known by the company but known to the insured and not disclosed to the company. If knowledge of such adverse claim or defect could be charged to the insured, this could have provided grounds for avoiding the policy, since the company was not informed thereof. 9 Appleman's, *Insurance Law & Practice*, p. 6, sec. 5205; 45 C. J. S., *Insurance*, p. 596, sec. 665; *First Nat. Bank & Trust Co. v. New York Title Ins. Co.* (1939), 171 Misc. 854, 12 N. Y. Supp. 2d 703, 715, 716; *Lesamiz v. Lawyers Title Insurance Corp.* (1958), 51 Wash. 2d 835, 322 Pac. 2d 351, 353. *See also: Lawyers Title Ins. Corp. v. Research Loan & Invest. Corp.* (8th Cir. 1966), 361 Fed. 2d 764.

However, the trial court found as fact that the insured had complied with all the requirements of the policy. During the trial of this issue, the court stated:

"It is my feeling that as to the getting of the policy of title insurance, knowing that there was a dispute there has not been established. . .

" . . .

"I find that at the time this policy was issued, that the plaintiffs, Selma Laabs and Theodore Laabs did not know of any dispute and did not secure this policy of insurance against a known dispute."

The testimony presented is set forth in unusual detail because there was a great deal of evidence, from various sources, tending to support the company's claim that the insured had knowledge of the existence of a dispute or adverse claim prior to the date of the policy. In addition, the court's statements in connection with its finding, cited *supra*, were made at the close of the trial on the scope of coverage, prior to the trial at which much of the

relevant testimony was given. However, on appeal, review of a trial court's finding of fact is strictly limited. This court has stated on many occasions that the weight of testimony and the credibility of witnesses are matters to be determined by the trial court, and that where more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the one drawn by the trier of fact. *Milbauer v. Transport Employes' Mut. B. Soc.* (1973), 56 Wis. 2d 860, 865, 203 N. W. 2d 135. In *Eberle v. Joint School Dist. No. 1* (1968), 37 Wis. 2d 651, 653, 155 N. W. 2d 573, this court stated:

"Since this was a case tried to the court without a jury, its findings will not be reversed on appeal unless they are contrary to the great weight and clear preponderance of the evidence. It is not necessary that the evidence in support of the findings constitutes the great weight or clear preponderance of the evidence. Nor is it sufficient that there is evidence to support a contrary finding. To command a reversal, such evidence, although sufficient to support a verdict, must constitute the great weight and the clear preponderance of the evidence. . . ."

The trial court in the instant case resolved the conflicting testimony in favor of the insured, determining that the policy was binding on the company in this instance. Although there is testimony which would have supported a contrary finding, there is ample credible evidence to support the determination of the trial court; therefore, the determination is not against the great weight and clear preponderance of the evidence.

Moreover, it is at least arguable that the defect and adverse claim were matters of public record and, for this reason, would not fall within the stated exclusion, even if the insured had been found to have had knowledge of the claim. In resolving the question of title, the trial court pointed out that rightful ownership of the disputed parcel could be shown through tracing its title descent

back to a deed conveyance made prior to the time the land was divided into government lots. The policy exclusion applies *only* to undisclosed defects or adverse claims *which are not matters of public record*. Such limitation is entirely reasonable in view of the nature of title insurance:

". . . A policy of title insurance means the opinion of the company which issues it, as to the validity of the title, backed by an agreement to make that opinion good, in case it should prove to be mistaken, and loss should result in consequence to the insured. . . ." *First Nat. Bank & Trust Co. v. New York Title Ins. Co., supra,* page 710. *See also:* 9 Appleman's, *Insurance Law & Practice,* p. 2, sec. 5201.

The company makes three additional arguments in support of its claim that it should not be held liable. These relate to policy exclusions addressed to the interest insured, the loss suffered, and whether insured created the adverse claim or defect.

The company argues that because the insured had never owned the disputed parcel, the policy excluded coverage. This argument is based upon a policy provision contained in paragraph 2 under Conditions and Stipulations:

". . . The coverage of this policy shall continue in force as of Date of Policy in favor of an insured so long as such insured retains an estate or interest in the land, . . ."

This provision does not exclude the company's liability under the facts of this case. Title insurance policies are subject to the same rules of construction as are generally applicable to contracts of insurance. 13 Couch, *Insurance* (2d ed.), p. 583, sec. 48:109. The policy is to be read as a whole. *D'Angelo v. Cornell Paperboard Products Co.* (1973), 59 Wis. 2d 46, 51, 207 N. W. 2d 846.

The initial insuring clause reads as follows:

"SUBJECT TO THE EXCLUSIONS FROM COVER-
AGE, THE EXCEPTIONS CONTAINED IN SCHED-
ULE B AND THE PROVISIONS OF THE CONDI-
TIONS AND STIPULATIONS HEREOF, CHICAGO
TITLE INSURANCE COMPANY, a Missouri corpora-
tion, herein called the Company, insures, as of Date of
Policy shown in Schedule A, against loss or damage, not
exceeding the amount of insurance stated in Schedule
A, and costs, attorneys' fees and expenses which the
Company may become obligated to pay hereunder, sus-
tained or incurred by the insured by reason of:
"1. Title to the estate or interest described in Sched-
ule A being vested otherwise than as stated therein;
". . ."

That clause connotes coverage for circumstances iden-
tical to those herein. The title to the real estate de-
scribed in the policy has been adjudicated as being vested
otherwise than as stated in the policy. Yet the company
contends that, for that very reason, the policy stipula-
tion cited, *supra*, absolves it of liability. However, that
stipulation is entitled "Continuation of Insurance after
Conveyance of Title." Thus, it was intended to apply
only in the event that the title to the real estate described
in the policy is conveyed voluntarily by the policyholder.

An insurance policy must be construed with considera-
tion for what a reasonable person in the position of the
insured would have understood its words to mean. *Luck-
ett v. Cowser* (1968), 39 Wis. 2d 224, 231, 159 N. W.
2d 94. This court stated in *Inter-Insurance Ex. v. West-
chester Fire Ins. Co.* (1964), 25 Wis. 2d 100, 106, 130
N. W. 2d 185:

"A construction of an insurance policy which entirely
neutralizes one provision should not be adopted if the
contract is susceptible of another construction which
gives effect to all of its provisions and is consistent with
the general intent. . . ."

Acceptance of the company's argument would entirely
neutralize the general insuring clause and would con-

travene the intent of the parties as to situations which are to be covered by the policy. The two provisions under consideration are not mutually exclusive. Such a construction of the policy provisions gives the words their ordinary meaning, carries out the reasonable intention of the parties and gives effect to both parts of the insurance agreement. However, even if an ambiguity can be perceived, such ambiguity must be resolved against the company. *Erickson v. Mid-Century Ins. Co.* (1974), 63 Wis. 2d 746, 753, 754, 218 N. W. 2d 497.

A third ground for reversal relied upon by the company relates to the following policy exclusion:

"The following matters are expressly excluded from the coverage of this policy:

" . . .

"3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; . . . ."

The company contends that the insured created the adverse claim by erecting a fence along the boundary and posting the disputed area. This argument appears to be patently erroneous.

Many cases construing the terms contained in the cited exclusion are set forth in 98 A. L. R. 2d 527. That annotation indicates that the word "create" as it is used in such exclusion refers to a conscious, deliberate causation or an affirmative act which actually results in the adverse claim or defect. *Hansen v. Western Title Insurance Co.* (1963), 220 Cal. App. 2d 531, 33 Cal. Rptr. 668, 98 A. L. R. 2d 520; *First Nat. Bank & Trust Co. v. New York Title Ins. Co., supra. See also: Feldman v. Urban Commercial, Inc.* (1965), 87 N. J. Super. 391, 209 Atl. 2d 640, 648. Here, the adverse claim arose from a defect in the insured's title to the disputed property. The insured had no part in affirmatively creating the claim or in the circumstances which gave rise to the defect. The

fence was erected and the property posted, not to create an adverse claim but because the insured believed themselves to be owners of the property.

Finally, the company argues that the insured suffered no loss and therefore liability is excluded by the following policy terms:

"The following matters are expressly excluded from the coverage of this policy:

"...

"3. Defects, liens, encumbrances, adverse claims, or other matters . . . (c) resulting in no loss or damage to the insured claimant; . . . ."

It is the company's position that because the insured never owned the disputed parcel, they suffered no loss by the adjudication of defective title. This argument has been rejected by several courts which have considered it. In *First Nat. Bank & Trust Co. v. New York Title Ins. Co., supra*, p. 711, it was said that:

". . . The word 'loss' is a relative term. Failure to keep what a man has or thinks he has is a loss. To avoid a possible claim against him; to obviate the need and expense of professional advice, and the uncertainty that sometimes results even after it has been obtained is the very purpose for which the owner seeks insurance. To say that when a defect subsequently develops he has lost nothing and, therefore, can recover nothing, is to misinterpret the intention both of the insured and the insurer. . . ."

*See also: Foehrenbach v. German-American Title & Trust Co.* (1907), 217 Pa. 331, 66 Atl. 561. The insured paid for a large parcel of property including the disputed portion, when the defective title was conveyed in 1943. Therefore, having contracted to insure against a title defect, the company cannot now claim that the insured has suffered no loss by reason of the fact that the title to the disputed property was defective.

*By the Court.*—Judgment affirmed.