**FIRST ASSEMBLY CHURCH OF WEST PLAINS, a Missouri Not–For–Profit Corporation, Plaintiff–Respondent,**

v.

**TICOR TITLE INSURANCE COMPANY, Defendant–Appellant.**

No. 18572.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 15, 1994.

Motion for Rehearing or Transfer Denied March 8, 1994.

Application to Transfer Denied April 26, 1994.

Ben K. Upp, Springfield, for defendant-appellant.

Patrick J. Platter, Paul F. Sherman, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for plaintiff-respondent.

GARRISON, Judge.

Ticor Title Insurance Company ("Ticor") appeals from a judgment entered in favor of its insured, First Assembly Church of West Plains ("Local Church"). The primary issue is whether claims being made concerning the Local Church's property are covered or excluded under Ticor's title insurance policy. The factual background of the case is complex, requiring an extensive review.

## FACTUAL BACKGROUND

The Local Church was originally organized in 1912, and first affiliated with the Assemblies of God in 1917. At some point it was incorporated as a not-for-profit corporation under the name First Assembly of God Church of West Plains, Missouri.

The Local Church had a constitution and bylaws which acknowledged its affiliation with the Assemblies of God, made provisions for a governing body, deferred in some instances to the constitution and bylaws of the Southern Missouri District Council of the Assemblies of God ("District Council"), and also authorized supervision by the District Council under certain circumstances.[1]

---

1. The Local Church's constitution reads, in part, as follows:

Article II, Section 1. While maintaining its inherent rights to sovereignty in the conduct of its own affairs, this assembly shall voluntarily enter into full cooperative fellowship with assemblies ... associated in the Southern Missouri District, and the General Council of the Assemblies of God, with headquarters at Springfield, Mo., and shall share in the privileges and assume the responsibilities enjoined by that affiliation.

....

Article II, Section 4. Items not covered by this document are referred to the Constitution and Bylaws of the Southern Missouri District Council.

....

Article VII, Section 1. The government of this Assembly shall be vested in its Official Board which shall consist of the Pastor and five or more ... Deacons. This Board shall act as trustees of the Assembly, the corporate board and all spiritual and material management of this Assembly shall be committed to them, subject to the provisions of this constitution and bylaws....

....

Article XI, Section 1. All property of the assembly shall be deeded to the assembly and held in its name. No real property of the assembly shall be sold, leased, or mortgaged or otherwise disposed of without the same shall have first been recommended by a vote of at least two-thirds of the voting members who are in attendance at the regular meeting or a special meeting of the assembly which has been called for the consideration of the proposal....

Article XI, Section 2. In the event that this Assembly shall cease to function as a church body, under the direction of the pastor or other duly authorized lender [sic], by not having a regular church service for a period of six months, then the property, real and chattel, shall become the property of the Southern Missouri District Council of the Assemblies of God, a corporation, whose headquarters are located at Springfield, Missouri. This District Council shall forthwith have full authority to use or dispose of the property at their discretion....

....

Article XII. The Constitution may be changed by a two-thirds vote of the membership of the Assembly who are in attendance at any regular or special meeting called for that purpose, providing it is consistent with the provisions of the Constitution and Bylaws of the Southern Missouri District....

In January 1989, the Local Church's board requested that its pastor resign. The pastor reported to the District Council that there were irreconcilable differences and requested an investigation. Upon the pastor's refusal to resign, a meeting of the congregation was called on January 21, 1989, the propriety of which was challenged, but which resulted in a decision to fire him. Thereafter, a meeting was held on January 26 between the deacons of the Local Church, the pastor and representatives of the District Council. As a result of that meeting, the District Council declared that it was placing the Local Church under District supervision until the strife ceased,[2] and it further determined that "the Church Board shall be set aside." (Hereafter that board will be referred to as the "Suspended Board.") The District Council appointed temporary directors and trustees of the Local Church to serve in the capacity of directors ("Temporary Board").

In February, the Temporary Board passed a resolution purporting to change the identity of the persons authorized to draw on the Local Church's bank accounts. Evidence also indicated that at some point the locks on the church building were changed by either the pastor or District Council. On March 9, 1989, Boatmen's First National Bank of West Plains filed an interpleader suit against the Local Church, the District Council and the Temporary Board in which it alleged that they were adverse claimants to funds on deposit in the bank and requested that the defendants interplead to settle their respective rights in the funds. A similar suit was later filed by the West Plains Bank on May 16, 1989, except that it also included the Suspended Board members as defendants.

On April 29, 1989, a meeting of the voting members of the congregation resulted in a decision to disassociate the church from the Assemblies of God, to change the name to First Assembly Church of West Plains, and to amend the constitution, bylaws and articles of incorporation accordingly. It was also decided to transfer and convey all the property and accounts of the church to the new name. On the same day, the Suspended Board changed the locks on the church building so that they had access. On May 4, 1989, the Secretary of State issued a Certificate of Amendment changing the name from First Assembly of God Church of West Plains, Missouri to First Assembly Church of West Plains. Three days later, on May 7, 1989, there was a meeting of the Suspended Board, the minutes of which included the following:

> It was noted that Rev. Combs [the pastor] has not moved from the parsonage and that legal action may be necessary.
>
> The Board discussed the possibility of purchasing title insurance for the church and parsonage property. The Board unamously [sic] agreed to authorize the Secretary to make the purchase.

On May 14, 1989, the name change was recorded in the Howell County Recorder's Office.

On May 24, 1989, the secretary of the Suspended Board, Dennis Von Allmen, contacted Marjorie Privette of Howell County Title, who was authorized to issue title commitments and policies in behalf of Ticor, and requested a title insurance policy on the church building as well as the parsonage. According to Mr. Von Allmen, he made the original request in a brief telephone call, telling her that "the local church had experienced some difficulties with the District

The bylaws provide in part:
> Article II, Section 2(c). Should there arise irreconcilable differences between the pastor and members of the Official Church Board, destroying unity and the successful ministry of the local assembly, the District Executive Presbytery, ... upon request from the pastor or a majority of the Official Board, shall investigate such differences and upon a two-thirds vote of the investigating committee, may declare that the church be brought under District supervision until such strife ceases.
>
> ....

> Article V. ... The Bylaws may be amended ... provided it is consistent with the provisions of the Constitution and Bylaws of the Southern Missouri District
>
> ....

2. The evidence indicated that the affiliation of individual churches with the Assemblies of God was of two types: as a General Council church, which conducts its own business affairs through its own board of directors; and as a District Council church, which has limited powers in conducting its own business affairs and is subject to some control by the District Council.

Council and that the local church had to disassociate from the Assemblies of God," and further that they "wanted to apply for title insurance to make sure that we did have good title of the property." Ms. Privette disputed that evidence and said that she was not told about problems between the church and the District Council, but was told that the name had been changed and they were no longer affiliated with the Assemblies of God. Mr. Von Allmen was not asked for any additional information or documentation. Ms. Privette was not furnished with the organizational documents (including the constitution and bylaws) of either the Local Church or the District Council; she was not told that the Local Church had voted to terminate the pastor but that he remained in the parsonage with no apparent intent to leave; and she was not told that the locks had been changed on the church building. The policy was issued on June 1, 1989, to First Assembly Church of West Plains (formerly First Assembly of God Church of West Plains, Missouri) as the named insured.

On February 28, 1991, the District Council and the members of the Temporary Board, together with one of the members from the Suspended Board, filed an amended cross-claim in the interpleader suits [3] against the other members of the Suspended Board.[4]

The preamble to the amended cross-claim contained allegations applicable to all of the individual counts. Among other things, it recited the provisions of the Local Church's bylaws and constitution referred to earlier in this opinion; alleged that the then board of the Local Church called a business meeting of the church, contrary to the provisions of the constitution; and recited the fact that the Temporary Board had been installed and the Local Church had been placed under District supervision. The following is a summary of the six counts contained in the amended cross-claim:

### COUNT I

Alleged that after appointment of the Temporary Board, the Suspended Board held "themselves out to the public as the Official Board of the Local Church and Church Corporation, promoted and participated in the unlawful and unauthorized operation, maintenance, possession, use and control of the Local Church's assets ... including the church building and parsonage, and interfered with the Local Church's fundamental right to use, enjoy, possess and control church property." It also alleged that the conduct of the Suspended Board was contrary to the rights of the membership of the church and the Temporary Board and was "unauthorized, illegal, unjustified, oppressive and wrongful." It sought an injunction against the members of the Suspended Board restraining them from "misusing, appropriating, dissipating, wasting, conveying, transferring, mortgaging, encumbering, damaging" the real and personal property of the Local Church and "from excluding and denying the Local Church Membership and the Temporary Board of Directors the use and enjoyment of the Local Church's real and personal property."

### COUNT II

Alleged a dispute concerning the meaning and application of the bylaws relating to District supervision of the church. It sought a declaratory judgment concerning the authority of the District Council to establish District supervision of the Local Church, the authority of the Temporary Board, including its authority to manage the affairs of the corporation, and a determination as to the identity of the authorized governing board of the Local Church.

### COUNT III

Alleged that the April 29, 1989, meeting at which the decision was made to disassociate from the Assemblies of God and change the corporation's name was "improperly called and an illegal meeting under the church's Constitution and Bylaws";

---

3. The two separately filed interpleader suits had been consolidated.

4. This cross-claim did not include a claim against the Local Church under its corporate name.

that the amendments to the constitution and bylaws were inconsistent and in conflict with the constitution and bylaws of the District Council; violated the bylaws of the Assemblies of God by failing to provide an opportunity for its representative to be heard before any such action was taken; the meeting violated § 355.115 RSMo in that insufficient notice of the meeting was given; and sought a declaratory judgment concerning the legality of the April 29, 1989, meeting and its results, including the amendment to the articles of incorporation, the change of name, and the disassociation from the Assemblies of God.

## COUNT IV

The District Council and the Temporary Board sought actual and punitive damages against the Suspended Board for their allegedly "wrongful acts" by which they intentionally interfered with the Local Church's right to use, enjoy and possess its property.[5]

## COUNT V

Based on all of the prior allegations, it sought a constructive trust on the church's property, including real estate, in favor of the "Assemblies of God denomination and local Assemblies of God ministry," alleging that the Suspended Board would be unjustly enriched and the intentions and desires of members and contributors of the Assemblies of God denomination would be

frustrated and ignored in the absence of such protection.

## COUNT VI

This count is conditioned upon there being a finding that a disaffiliation from the Assemblies of God denomination by the Local Church had occurred. In such event, it sought the application of a trust for the reason that the Local Church's constitution provides that all property of the church will become the property of the District Council if the church "shall cease to function as a church body, under the direction of the pastor or other duly authorized lender [sic], by not having a regular church service for a period of six months."

▮▮▮ The Local Church tendered defense of the amended cross-claim to Ticor, which was refused. The Local Church (under the corporate name of First Assembly Church of West Plains) then filed the instant case seeking a declaratory judgment that Counts I, II, III, V and VI of the amended cross-claim constituted losses or damages covered by the policy which Ticor had a duty to defend.[6] It also sought damages for vexatious refusal to pay. This appeal flows from the trial court's judgment which ordered Ticor "to defend the First Assembly Church of West Plains and members of its governing body" in the two interpleader cases;[7] to pay attorneys fees to and in behalf of the Local Church; and which declared that five of the six counts of the amended cross-claim (all but the claim for damages) constituted losses and damages covered by the policy.[8]

---

5. The trial court did not declare that this count was covered under the policy or that Ticor need defend it. None of the parties take issue with that finding.

6. The argument section of Ticor's brief contains a reference to the fact that the amended cross-claim names only the members of the Suspended Board and not the corporation which is the named insured. That contention is not contained in the point relied on, however. Issues reflected only in the argument section of the brief are not presented for appellate review. *Berger v. Huser*, 498 S.W.2d 536, 539[2] (Mo.1973).

7. No issue is raised about the trial court's order that Ticor defend the members of the governing board in addition to the named insured (First Assembly Church of West Plains) or that it defend the interpleader suits, defense of which was

not requested in the instant suit and neither of which purported to affect the insured real estate.

8. The judgment does not dispose of the vexatious penalty count. Ordinarily, this would prevent the judgment from being final and appealable, thereby depriving us of jurisdiction. *See Taylor v. F.W. Woolworth*, 641 S.W.2d 108, 110[1] (Mo. banc 1982); *Stith v. St. Louis Public Service Co.*, 363 Mo. 442, 251 S.W.2d 693, 695[2] (1952); *In re Marriage of Short*, 847 S.W.2d 158, 161[3] (Mo.App.1993); § 512.020, RSMo 1986. In the instant case, however, both parties agree that the Local Church abandoned the vexatious penalty claim at trial. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956).

## ISSUES

■ The Local Church contends that the points relied on in Ticor's brief do not comply with Rule 84.04(d) [9] in that they fail to state "wherein and why" the trial court erred and therefore preserve nothing for appellate review, citing *Thummel v. King*, 570 S.W.2d 679, 685–686 (Mo. banc 1978). While some of the points may not strictly comply with the requirements of Rule 84.04(d), the basis of the issues raised in the points are cognizable from the argument section of the brief. Under such circumstances, an appellate court may proceed to review the point in the interests of justice. *See In re Marriage of Edwards*, 838 S.W.2d 494, 497 (Mo.App.1992), and *State ex rel. Beaufort Transfer v. P.S.C.*, 593 S.W.2d 241, 243–244 (Mo.App.1979). We choose to do so in the instant case.

Ticor raises three points on this appeal, the first of which we have concluded is determinative and requires reversal, to-wit: the trial court erred in entering the judgment because the claims made in the amended cross-claim were excluded from coverage under the provisions of the title insurance policy. Accordingly, we do not discuss the other points.

## OPINION

The standard of review of this court-tried case is based on Rule 73.01(c) as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Therefore, the judgment of the trial court is to be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32.

Ticor, by its policy, agreed to insure "as of Date of Policy ... against loss or damage ... sustained or incurred by the insured by reason of: (1) Title to the estate or interest described in Schedule A being vested otherwise than as stated therein; (2) Any defect in or lien or encumbrance on such title; (3) Lack of a right of access to and from the land; or (4) Unmarketability of such title." No issue is raised concerning whether Counts I, II and III of the amended cross-

claim constitute adverse claims on the real estate which would be covered under the policy. Counts V and VI would, however, if sustained, result in a judgment which would affect the Local Church's title or right to possession of the insured property. In Count V, a constructive trust was sought in favor of the Assemblies of God denomination, and in Count VI a judgment was requested imposing a trust on the Local Church's property and declaring that it is owned by the District Council.

■ In its first point, Ticor relies on exclusions contained in its policy, arguing that the claims against the Local Church are not covered and do not require it to provide a defense. Exclusions under an insurance policy are construed against the insurer, who has the burden of proof to show that they apply. *Foremost Construction Co. v. Killam*, 399 S.W.2d 593, 596 (Mo.App.1966).

■ One of the policy exclusions relied on by Ticor (hereafter referred to as the "created" exclusion) reads as follows:

> The following matters are expressly excluded from the coverage of this policy:
> . . . .
> 3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; . . .

There is authority for the proposition that application of the "created" exclusion requires that the defect, lien or encumbrance result from some intentional misconduct or inequitable dealings by the insured, as opposed to innocent or negligent conduct. See *Brown v. St. Paul Title Insurance Corp.*, 634 F.2d 1103, 1107, n. 8 (8th Cir.1980), and cases collected in 87 A.L.R.3d 515, *Title Insurance: Exclusion of Liability for Defects, Liens, or Encumbrances Created, Suffered, Assumed, or Agreed to by the Insured*. However, in applying the exclusion, the *Brown* court found that the insured "created" the mechanic's liens for which coverage was sought under the title insurance policy by failing to disburse loan proceeds. There was no contention that the failure was unlawful or constituted "misconduct" as opposed to being

---

9. All references to rules are to Missouri Rules of Court, V.A.M.R.

merely intentional. The court concluded that the liens were "created" by the insured and were excluded from coverage under the policy by the "created" exclusion like the one involved in the instant case.

This result was in keeping with cases which apply the "created" exclusion in instances where the defect, lien or encumbrance results from a conscious, deliberate, or affirmative act of the insured. *See Laabs v. Chicago Title Insurance Co.*, 72 Wis.2d 503, 241 N.W.2d 434 (1976), and *Arizona Title Insurance & Trust Co. v. Smith*, 21 Ariz.App. 371, 519 P.2d 860, 863 (1974). The "created" exclusion has been applied where an insured violated his fiduciary duties as a trustee of the insured property resulting in failure of title. *Taussig v. Chicago Title & Trust Co.*, 171 F.2d 553 (7th Cir.1948). In *Brick Realty Corp. v. Title Guaranty & Trust Co.*, 161 Misc. 296, 291 N.Y.Supp. 637 (1936), it was held that the insurer was not obligated to defend suits which were brought about by the consequences of the acts of the insured. See also *Mark Twain Kansas City Bank v. Lawyers Title Insurance Corp.*, 807 F.Supp. 85, 87 (E.D.Mo.1992), which held that the title defect was "created" by the insured transferring money to an account other than the borrower under circumstances where it "knew or should have known" that the transfer was not proper and which caused the insured note and deed of trust to fail for lack of consideration.

In the instant case, Ticor contends that all of the claims for which coverage is sought were "created" by the Local Church and, therefore, are excluded from coverage under the policy. It points out that the claims flow from the Local Church's action in attempting to disassociate from the Assemblies of God, change its name and take control of the property; that those actions were either in violation of the constitution and bylaws (organizational documents) of the Local Church and District Council, or in contravention of the District Council's supervision of the Local Church, and contrary to the right of the

Temporary Board to control the affairs of the corporation, both of which have their basis in those organizational documents; and that the claims in the amended cross-claim stem from alleged intentional violations of the organizational documents which were voluntarily adopted. In fact, those actions of the Suspended Board were alleged to be "unauthorized, illegal, unjustified, oppressive and wrongful." Ticor thus argues, and we agree, that the claims for which coverage is sought arose as a result of the intentional, affirmative actions of the Local Church, the named insured, acting through its board.

The claims for which the Local Church seeks coverage under Ticor's policy do not flow from a defect in the title to the properties which existed on the date of the policy, but rather, from intentional actions of the insured.[10] It is the creation of the basis for the claim which will determine whether it is "created" by the insured and therefore excluded under the policy. *Safeco Title Insurance Co. v. Moskopoulos*, 116 Cal.App.3d 658, 667, 172 Cal.Rptr. 248, 253 (1981). Where the conduct which forms the basis for the claim is intentional and deliberate, as opposed to inadvertent or mistaken, the adverse claim will be considered as having been "created" and therefore excluded under the policy. *Id.*

In the instant case, there is no indication that the conduct of the Suspended Board about which the District Council and the Temporary Board complain in the amended cross-claim was mistaken, inadvertent or anything other than intentional. These actions form the basis of the claims for which coverage is sought under Ticor's policy. It is not alleged that there was some defect in the title when the policy was issued. Accordingly, we agree with Ticor that the claims for which coverage is sought were the result of the intentional, affirmative acts of the insured, were "created" by it within the meaning of the policy, and thus are not covered. The claims arose from the Local Church's

10. No issue is preserved for appellate review in the instant case concerning whether the corporation should be charged with the consequences of the Suspended Board's actions in determining whether the claims were "created." Both parties to this appeal proceed on the apparent premise that the rights of the corporation, the named insured, to coverage are determined by the actions of the Suspended Board. We will do the same.

violation of the organizational documents it had adopted, or its affirmative action contrary to the supervision and control it authorized in those documents.

The Local Church, in support of its contention that there was no showing that it intentionally encumbered the real estate and therefore the "created" exclusion should not apply, cites *Foremost Construction Co. v. Killam*, 399 S.W.2d 593. The *Foremost* case, however, was not decided on the basis of the "created" exclusion. There, the court determined that the outstanding taxes which constituted the "claims" for which coverage was sought, instead of being created by the insured, were created by law and existed before title was obtained. The controlling issue in *Foremost* was whether the insured knew of, but failed to disclose, the taxes when obtaining the policy (the "defects known" exclusion).[11]

The Local Church also argues that the "created" exclusion should not be applied because "Ticor's counsel did not submit this exclusion at trial." The exclusion was pleaded by Ticor, however, and the record does not disclose that it was withdrawn or abandoned. In fact, the trial court, in its Findings of Fact and Conclusions of Law, made specific findings on the issue as follows:

> There is no evidence that the Plaintiff created, suffered, assumed or agreed to any defective [sic] lien encumbrance or adverse claim upon the insured property. Indeed, all evidence indicates that the Plaintiff church has vigorously defended its sovereign rights as a Missouri not-for-profit corporation to own, use and enjoy the property insured under the policy.

The fact that the Local Church has defended its rights to the property does not require the conclusion that the adverse claims for which coverage is sought were not "created" by the insured and therefore excluded.

For the reasons stated, we conclude that the trial court erroneously applied the law and its judgment is therefore reversed.

11. Ticor also argues that the "defects known" exclusion applies in the instant case, but we do

PREWITT, J., concurs.

CROW, J., concurs and files concurring opinion.

CROW, Judge, concurring.

As I understand the principal opinion, it holds the claims for which coverage is sought were created, within the meaning of the exclusion, by the Local Church in that (a) it adopted a constitution and bylaws authorizing the District Council to seize control of the Local Church's property upon the occurrence of certain contingencies, and (b) the District Council seized control, claiming the right to do so on the basis of the constitution and bylaws. Having voluntarily placed the District Council in a position to do this, the Local Church has no claim against Ticor under the policy, whether or not the Local Church ultimately prevails in the dispute with the District Council.

That being our holding, I concur.