NORTHLAND INSURANCE COM-
PANIES, Cross Claimant–Re-
spondent,

v.

Kathy RUSSO, Individually, Kathy Russo,
Guardian Ad Litem for John Russo, Jen-
nifer Russo, and Janelle Russo, Minors,
and Michael Russo, Sr., Defendants–Ap-
pellants,

Elizabeth Whitman d/b/a Iron Horse
Excavating Co., and Martin James
Daugherty, Defendants.

No. 20782.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 20, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 11, 1996.

Application to Transfer Denied
Oct. 22, 1996.

## STANDARD OF REVIEW

"Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376[7] (Mo.banc 1993). The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law. *Id.*

> " 'When reviewing the entry of summary judgment, we view the evidentiary record in the light most favorable to the party against whom summary judgment was granted, determine if any genuine issue of fact exists which would require a trial, and determine if the judgment is correct as a matter of law.' "

*Judy v. Arkansas Log Homes Inc.*, 923 S.W.2d 409, 414[5] (Mo.App.1996) (quoting *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886[6] (1993)). A genuine issue of fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

Kevin C. Shelton, Bridges, Cisar & Shelton, Lake Ozark, for appellant.

Michael P. Mergen, Hall, Ansley, Rodgers & Condry, P.C., Springfield, for respondent.

SHRUM, Judge.

In this declaratory judgment action, Northland Insurance Company (Northland) sought to establish that exclusions in its "Commercial General Liability" policy precluded coverage for claims against its insureds arising out of a motor vehicle accident. The trial court granted summary judgment for Northland. This appeal was taken by family members of the person killed in the motor vehicle accident.[1] We reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

The pleadings and other documents before us reveal the following. In the spring of 1995, Kathy sued Elizabeth Whitman, d/b/a Iron Horse Excavating (Whitman) and Martin J. Daugherty (Daugherty) seeking to recover damages for herself and her minor children for the wrongful death of Raymond. Her petition alleges that Raymond died December 15, 1993, from injuries he received December 8, 1993, when a backhoe collided with his automobile. In more detail, the petition alleges that Daugherty, while working for Whitman, was driving a dump truck and towing a trailer on which the backhoe was being carried. As the dump truck and Raymond's vehicle approached one another,

---

1. The deceased is Raymond T. Russo (Raymond). His family members are: Kathy R. Russo, wife; minor children John, Jennifer, and Janelle; and Michael Russo, Sr., father. Without intending disrespect, when referring to the Russo family members individually, we use their first names. When referring to them collectively, we refer to them as Appellants.

the trailer separated from the dump truck and "the backhoe being transported thereon separated from said trailer" and then collided with Raymond's vehicle.

When this accident occurred, there was in force and effect a "commercial insurance policy" issued by Northland which provided certain liability coverage to Whitman. Northland filed a cross-claim[2] for declaratory judgment against Appellants, Whitman, and Daugherty seeking a declaration that it owed neither Whitman nor Daugherty a defense or indemnification for any sums adjudged owed by them to Appellants. Subsequently, Northland moved for summary judgment, claiming that its policy afforded no coverage for the accident due to exclusions for bodily injury arising out of the ownership or use of an "auto." In its suggestions, Northland characterized Kathy's allegations of negligence against Whitman and Daugherty as falling into three categories: "negligent operation of the truck; failure to properly connect the trailer to the truck; and failure to properly secure the back hoe to the trailer." The policy defines "use" to mean both "operation and 'loading or unloading[,]'" hence Northland's insistence that its policy afforded no coverage for Appellants' claims as a matter of law.

In response, Appellants asserted that there was coverage "by virtue of express language in the policy … affording coverage for losses arising out of 'the loading and unloading' of vehicles, or in the alternative, due to ambiguities in said policy which requires a finding in favor of coverage."

Following a non-evidentiary hearing, the trial court granted summary judgment in favor of Northland. In reaching its conclusion, the trial court declared that "[t]he allegations by [Appellants] that the trailer and back hoe were improperly secured are 'auto-related' and are 'merely incidental to the ownership, operation or use of the vehicles involved in the accident.'" It found that the exclusionary provisions found at Section I, Coverage A, paragraphs 2.g. and 2.h. of the policy applied and that Northland was entitled to judgment as a matter of law. This appeal followed.

### POLICY PROVISIONS

We reproduce here pertinent portions of Northland's policy held by Whitman, titled "Commercial General Liability Coverage Form:"

"SECTION I—COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III);

. . . .

2. Exclusions.

This insurance does not apply to:

. . . .

g. 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'

. . . .

h. 'Bodily injury' or 'property damage' arising out of:

(1) The transportation of 'mobile equipment' by an 'auto' owned or op-

**2.** Kathy's suit apparently prompted Shelter Mutual Insurance Co. to seek a declaration that Whitman was not covered by two separate automobile policies issued by Shelter, one covering the dump truck, the other the flatbed trailer. Shelter named as defendants: Whitman, Daugherty, Northland, Kathy and her three minor children, and the deceased's surviving parent, Michael Russo, Sr. Shelter ultimately dismissed the declaratory judgment action on its own behalf, but the action continued because Northland had already filed a cross-claim. Whitman and Daugherty did not appeal from the judgment for Northland on its cross-claim.

erated by or rented or loaned to any insured;

. . . .

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay. . . .

. . . .

3. The Products–Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of 'bodily injury' and 'property damage' included in the 'products-completed operations hazard.'

. . . .

## SECTION V—DEFINITIONS

. . . .

7. 'Loading or unloading' means the handling of property:

 a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or 'auto;'

 b. While it is in or on an aircraft, watercraft or 'auto;' or

 c. While it is being moved from an aircraft, watercraft or 'auto' to the place where it is finally delivered;

. . . .

11. a. 'Products-completed operations hazard' includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

. . . .

 (2) Work that has not yet been completed or abandoned.

. . . .

 c. This hazard does not include 'bodily injury' or 'property damage' arising out of:

 (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the 'loading or unloading' of it;

. . . .

15. 'Your work' means:

 a. Work or operations performed by you or on your behalf; and

 b. Materials, parts or equipment furnished in connection with such work or operations."

## DISCUSSION AND ANALYSIS

In their sole point relied on, Appellants contend that the trial court erred in granting summary judgment in that the Northland policy does afford coverage by virtue of an exception to an exclusion in the definition of "Products-completed operations hazard." We agree.

The following general rules for interpretation of insurance contracts are well established:

> "[W]here insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. . . . If the language is ambiguous, it will be construed against the insurer. . . . An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract."

*Peters v. Employers Mutual Casualty Co.,* 853 S.W.2d 300, 302[6–8] (Mo.banc 1993) (citations omitted).

 Insurance contracts are to be given a reasonable construction and interpreted so as to afford coverage rather than defeat coverage. *Nixon v. Life Investors Ins. Co. of America,* 675 S.W.2d 676, 679[9] (Mo.App. 1984). Construction of insurance policy language which may render a portion of the policy illusory should not be indulged in. *Cano v. Travelers Ins. Co.,* 656 S.W.2d 266, 271[5] (Mo.banc 1983). If an insurance contract promises something at one point and takes it away at another there is an ambiguity. *Behr v. Blue Cross Hosp. Service, Inc.,* 715 S.W.2d 251, 256[5] (Mo.banc 1986).

The "SECTION I–COVERAGES" portion of this policy does not explicitly state that the "Products-completed operations hazard" coverage defined in Section V, par. 11 is part of the protection purchased by Whitman. Nevertheless, other parts of the policy clarify that such coverage was clearly intended. Specifically, the policy's "Coverage Part Dec-

larations" sheet records the "Limits of Insurance" thusly:

| | |
|---|---|
| General Aggregate Limit (Other Than Products–Completed Operations) | $200,000 |
| Products–Completed Operations Aggregate Limit | $100,000 |

Consequently, any construction of the policy must include consideration of the "Products-completed operations hazard" coverage.

■ As Section V, paragraph 11.c. provides, the "Products-completed operations hazard" *does not* include " 'bodily injury' or 'property damage' arising out of ... [the] transportation of property, *unless* the injury or damage arises out of a condition in or on a vehicle created by the 'loading or unloading' of it." (emphasis ours). Thus, according to this policy provision, the "Products-completed operations hazard" does apply to injury or damage arising out of the transportation of property which "arises out of a condition in or on a vehicle created by the 'loading or unloading' of it."

That coverage is "taken away," so to speak, in another policy provision, namely the exclusionary clauses relied upon by the trial court, found in Section I, Coverage A, paragraphs 2.g. and 2.h. In particular, we note that exclusion 2.g. provides that "this insurance does not apply to" injury or damage arising out of the use of an insured's auto, and that use includes "loading or unloading." Coverage for injury or damage arising out of a condition created by the "loading or unloading" of a vehicle is promised at one point in this insurance contract and taken away at another. Therefore, there is an ambiguity and we are compelled to construe that part of the policy against Northland. *See Behr,* 715 S.W.2d at 256[5]; *Rice by Rice v. Fire Ins. Exch.,* 897 S.W.2d 635, 637[4] (Mo.App.1995).

■ Unless an insurance contract is so clear in its meaning that as a matter of law it precludes a plaintiff's recovery, a motion for summary judgment based on the contract should be denied. *Rice,* 897 S.W.2d at 637[9]. Given that the ambiguous policy, as construed against Northland, provides coverage for a condition created by the "loading or unloading" of a vehicle, we must determine whether any one or more of Kathy's negligence allegations present an issue of material fact regarding this limited coverage. We find such an issue in the negligence allegations that Northland characterizes as "failure to properly secure the back hoe to the trailer." Such allegations suggest the existence of two plausible but contradictory accounts of essential facts in a situation where the policy provides coverage as a matter of law, hence the presence of genuine issues of fact. *See ITT Commercial Fin. Corp.,* 854 S.W.2d at 382. Accordingly, we hold that Northland was not entitled to judgment as a matter of law. We must reverse the judgment and remand the cause for further proceedings. In so holding, we do not ignore Northland's arguments which we now address briefly.

In arguing the validity of the exclusionary clauses in its policy, Northland relies on two cases which were also incorporated into the trial court's summary judgment. The cases, *American States Ins. v. Porterfield,* 844 S.W.2d 13 (Mo.App.1992), and *Hartford Cas. Ins. Co. v. Budget Rent–A–Car of Missouri, Inc.,* 864 S.W.2d 5 (Mo.App.1993), both concern commercial general liability policies which contain exclusionary clauses identical to I.A.2.g. of Northland's policy. However, both cases are clearly distinguishable as nothing in their text indicates that the policies which contained the identical exclusionary clauses given effect by those two cases also contained the "Products-completed operations hazard" definitional provision which gave rise to the ambiguity in Northland's policy. The cases from other jurisdictions cited by Northland are likewise inapplicable.

■ In its brief, Northland offers four reasons why its exclusionary clauses could be given effect even in light of the "Products-completed operations hazard" provision. The first of these, that "Products-completed operations hazard" coverage is only applicable to autos not owned or operated by the insured is completely unsupported by the text of the "Products-completed operations hazard" definition. As the definition reads, this coverage includes "your work" which includes equipment furnished in connection with work performed by the insured.

The second "reason" is that the "Products-completed operations hazard" provision excludes injury or damage arising out of the transportation of property. This is true, but it is not the blanket exclusion Northland implies it is since the exclusionary clause goes on to say "unless the injury or damage arises out of a condition in or on a vehicle created by the 'loading or unloading' of it."

 In its third "reason," Northland states that yet another exclusionary clause, this time within the "Products-completed operations hazard" definition, bars coverage for work that is not completed or abandoned, and argues that it should be given effect by this court because Kathy has failed to allege facts which bring her claims within the coverage of the provision.[3] From this, Northland suggests that Kathy should have alleged the fact that Daugherty's work on behalf of Whitman was completed at the time of the accident. That fact goes to the inapplicability of an exclusionary clause, not to coverage. The insurer has the burden of proof to show that exclusions under an insurance policy apply. *First Assembly Church v. Ticor Title Ins.*, 872 S.W.2d 577, 582[4] (Mo.App.1994). We have already concluded that Kathy has alleged facts which may entitle Whitman and Daugherty to coverage under this provision. Kathy is not required to allege the absence of facts tending to support each and every exclusionary clause in the policy.

Northland's final attempt to nullify the existence of coverage under the "Products-completed operations hazard" provision concerns the issue of whether the facts of this case fit the definition of "loading or unloading" as it is used in that provision. On this record the trial court did not have before it the question of whether the alleged acts constituted "loading or unloading."[4] Although Northland attempts to argue this issue on appeal, we do not consider contentions not put before the trial court. *Strunk v. Hahn*, 797 S.W.2d 536, 549 (Mo.App.1990).

We reverse and remand.

CROW, P.J., and PARRISH, J., concur.

---

3. The "work ... not yet completed or abandoned" exclusion is found in Section V–Definitions, par. 11 a(2).

4. Our previous discussion of the "failure to secure backhoe to the trailer" category of allegations was illustrative only and not exclusive. We emphasize that we reach no conclusions about whether other negligence allegations in the underlying petition present genuine issues of material fact under the "loading or unloading" coverage.