**MECO SYSTEMS, INC., Plaintiff–Respondent,**

**Artisan Construction Services, Inc., Plaintiff,**

v.

**DANCING BEAR ENTERTAINMENT, INC., Defendant–Appellant,**

**Marshall–Waters–Woody, Inc., Defendant–Respondent.**

No. 21209.

Missouri Court of Appeals, Southern District, Division Two.

June 25, 1997.

Kendall R. McPhail, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for appellant.

John R. Lewis, Timothy J. Harris, Lewis & Moon, Springfield, for respondent MECO.

John R. Lightner, Baird, Lightner & Millsap, P.C., Springfield, for respondent Marshall–Waters–Woody.

SHRUM, Judge.

This case involves a construction contract whereby MECO Systems, Inc. (Contractor) agreed to build a theater for Dancing Bear Entertainment, Inc. (Owner). The trial court entered summary judgment denying Owner's claim against Contractor for liquidated damages. Owner claimed entitlement to liquidated damages as Contractor failed to complete the work within the time set by their

contract. In a separate summary judgment, the trial court denied Owner's cross-claim against Marshall–Waters–Woody, Inc. (Architect). The cross-claim alleged that Architect breached its contractual duties and obligations when it granted Contractor extra time to complete construction. We reverse both judgments and remand for further proceedings.

## STANDARD OF REVIEW

Review of summary judgment is governed by Rule 74.04, which provides in pertinent part:

"(c)(3) ... [Summary] judgment sought shall be entered forthwith if a motion for summary judgment and response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The granting of summary judgment is purely a question of law. Therefore, appellate review of a grant of summary judgment is essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993).

" 'When reviewing the entry of summary judgment, we view the evidentiary record in the light most favorable to the party against whom summary judgment was granted, determine if any genuine issue of fact exists which would require a trial, and determine if the judgment is correct as a matter of law.' "

*Judy v. Arkansas Log Homes Inc.*, 923 S.W.2d 409, 414[5] (Mo.App.1996) (quoting *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886[6] (1993)). A genuine issue of fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

## FACTS AND PROCEDURAL BACKGROUND

Owner and Contractor signed a contract (herein called "construction documents") whereby Contractor agreed to build the Charley Pride Theater in Branson, Missouri. In a separate instrument (herein called Architect/Owner contract), Owner contracted for Architect to provide the architectural services necessary to design and construct the theater.

When the theater was completed, Contractor filed suit to impose mechanics liens on the property. As part of its defense, Owner claimed a set-off of $300,000 for liquidated damages as Contractor failed to "substantially complete" the work by April 1, 1994. In a counterclaim against Contractor, Owner sought $300,000 as liquidated damages resulting from unexcused delay by Contractor in completing the work. In responsive pleadings, Contractor alleged that Architect "authorized additional time for substantial completion of the project ... pursuant to the terms of the [construction documents] and that "the project was substantially completed within the extended date."

Next, Owner filed a cross-claim against Architect, alleging that if Owner was bound by any action taken by Architect to extend the completion date, such action was in breach of Architect's contractual duties and obligations to Owner. Accordingly, Owner sought from Architect a sum equal to any amount that Owner was unable to recover from Contractor because of Architect's extending the time for completion of the work.

In June 1996, Contractor and Architect filed motions that resulted in the trial court's entry of summary judgments denying both Owner's liquidated damage claim/defense as to Contractor and that part of Owner's cross-claim charging Architect with breach of contract for extending the completion date.

*Contractor's Motion for Summary Judgment*

As originally written, the "construction documents" set the date of "substantial completion of the entire work" for April 1, 1994. A subsequent amendment to the "construction documents" included the following:

"[P]aragraph 4.2 of Article 4 of [of the Standard Form of Agreement] is hereby modified to add ... that [if] the date of commencement is later than September 1, 1993, the substantial completion date shall be extended by an equal number of days corresponding to the delay in the date of commencement, provided, however, that such delay in the date of commencement is

not due to any failure by Contractor to timely apply for and provide all information and perform all acts necessary to be performed by Contractor for the issuance of the building permit. Said paragraph is further amended to provide that if the Contractor shall fail to complete the work by April 1, 1994, except for delays caused by Contractor's failure to receive plans and specifications in a timely manner from Architect, delays occurring because of the failure of the City of Branson or any ... agency thereof to timely approve plans, specifications or perform inspections, or delays resulting from inclement weather ..., the Contractor shall pay or allow to Owner the sum of Five Thousand Dollars ($5,000) per day as liquidated ... damages for every day the work shall remain uncompleted beyond the said completion date. In the event of such delays, the Architect shall establish a new date by which the work should reasonably be completed. . . ."

Summarized, Contractor's facts in support of its motion for summary judgment were that Contractor requested an extension of the completion date and Architect granted 66 additional days for completion, thus extending the substantial completion date from April 1, 1994, to June 6, 1994.' Contractor relied on a November 4, 1994, letter from Architect to Owner's lawyer as evidence that Architect granted the time extension. Architect's two-page letter concluded with: "[W]e feel [Contractor] has a legitimate claim requesting 53 days delay because of inclimate [sic] weather condition and 13 days delay because of the City's lack to timely issue the building permit."

Continuing, Contractor established that the project was in fact substantially completed by May 30, 1994, well within the completion date as allegedly extended. Citing paragraph 2.6.18 of the Architect/Owner contract, Contractor argued to the trial court that the Architect's "ruling" on the extension question

was binding on both parties in the absence of fraud or gross mistake.[1] Since Owner never charged Architect with fraud or gross mistake in granting the time extension, Contractor arrived at its position that no disputed fact issues remained as to liquidated damages and thus, summary judgment on that issue was warranted.

To support its motion for summary judgment, Contractor submitted the "Standard Form" component of the "construction documents," an Amendment to the "Standard Form of Agreement," the Architect/Owner contract, monthly letters by Contractor to Ric Cooper (Cooper) (Owner's president) requesting "weather delays," a copy of Architect's November 4, 1994, opinion letter, and the affidavit of Contractor's project manager (Gabby) stating that in January 1994 he gave Cooper documents explaining fifteen days' loss of construction time due to the City of Branson's failure to issue a building permit. Gabby attached to his affidavit what he identified as the documents delivered to Cooper on January 24, 1994. Language in one of those document reads: "EVENTS AFTER ALL PARTIES CONCERNED WERE NOTIFIED OF THE MAY 15, 1994 COMPLETION DATE, WHICH EXCLUDED WEATHER, BUILDING PERMIT AND OTHER DELAYS NOT CONTROLABLE [SIC] BY MECO."

In response, Owner asserted Contractor was not entitled to summary judgment as (1) the Architect/Owner contract did not vest Architect with authority to make a binding decision on extending the contract and (2) Contractor did not request time delays in the manner required by the "construction documents." Owner attached to its response the "General Conditions" component of the "construction documents" and then quoted various sections in both contracts to support its claim that Architect's decision regarding time extension was not contractually binding and final.[2]

1. Later in this opinion, under the heading "Contract Provisions," we set out paragraph 2.6.18 of the Architect/Owner contract as well as all other pertinent provisions of these two particular contracts.

2. In this opinion, under the heading "Contract Provisions," we reproduce some of the contract sections cited by Owner in its opposition to Contractor's motion for summary judgment.

Owner made the additional argument that disputed issues of material fact existed as to why construction was not completed by April 1, 1994. To support that argument, Owner filed an affidavit by Cooper. In his affidavit, Cooper cited reasons other than weather and permit delay which he claimed caused Contractor not to complete the project by April 1. In part, Cooper pointed to Contractor's failure to construct parking lots, curbs, and gutters in the fall of 1993 as had been discussed. In November 1993, Contractor told Cooper that it was being delayed by the steel fabricator. In that same time period, Contractor told Cooper that obtaining permits was not going to be a problem "with respect to the construction schedules." Once Cooper learned that Contractor would not meet the April 1 completion date, he told Architect that Owner would not agree to an extension of the completion date. Cooper stated Owner opposed the time extension because Contractor had not performed the work in a "timely manner." Moreover, Cooper claimed delay occurred because Contractor did not do the work in the order originally discussed, i.e., parking lots in the fall, with theater construction during the winter. When Owner was finally told about Contractor's time extension claim in October 1994, Owner insisted that Architect not grant a time extension "due to the manner in which the construction management of this project had been handled which made the weather days irrelevant."

*Architect's Motion For Summary Judgment*

Architect's motion for summary judgment relied in part on § 2.6.18 of the Architect/Owner contract which required the Architect to "render written decisions within a reasonable time on all claims [or] disputes ... between the Owner and Contractor relating to the execution or progress of the Work as provided in the Contract Documents." Architect also cited several sections in the "construction documents," including § 4.2.12 of the "general conditions." Section 4.2.12 states that Architect "will not be liable for results of interpretations or decisions so rendered in good faith."[3] Architect's motion

stated that Architect approved 66 days of Contractor's time extension claim. To explain its decision, Architect submitted the affidavit of Bill Woody, project architect. Woody's affidavit stated that when the dispute arose between Contractor and Owner on the liquidated damages issue, Contractor asked Woody to make a decision on its weather delay claims and on its claim for delay due to lack of building permit. Woody then evaluated daily construction reports by the project superintendent and copies of climate data from two weather centers. From such data, Woody concluded that inclement weather had in fact caused a delay of 53 days. He stated that his decision was "rendered in good faith and without any bad motive or partiality." Regarding the building permit issue, Woody considered records from the steel erection firm, copies of daily reports from the project superintendent and shipping invoices on the metal structure. From such documents, he concluded that a 13–day delay for building permit approval did occur. Woody declared that his decision regarding the permit-delay claim was also "rendered in good faith and without any bad motive or partiality...."

In response, Owner again relied on numerous provisions in the "construction documents" and the Architect/Owner contract to argue that Architect lacked authority to make a binding decision to extend the contract and that Contractor did not request time delays in the manner required by the "construction documents." Additionally, Owner insisted that a material issue of fact existed as to Architect's impartiality in granting the time extension. In support, Owner pointed to Contractor's letter dated April 28, 1994, directed to Architect, in which Contractor listed "various items that have affected the completion date of the project." Contractor's list included several delays which Owner characterized as "potentially attributable" to Architect; yet, Architect's decision letter ignored the events for which Architect might be responsible.

Following a non-evidentiary hearing, the trial court entered summary judgments fa-

---

**3.** Later in this opinion, when necessary to analyze the points on appeal, we describe other parts of the "construction documents" upon which Architect relied.

vorable to Contractor and Architect. Pursuant to Rule 74.01(b), the trial court found no reason for delay in making the judgments final for purposes of appeal. This appeal followed.

## CONTRACT PROVISIONS

Pertinent provisions from the Architect/Owner contract read:

"2.6.13 The Architect ... may authorize minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time which are not inconsistent with the intent of the Contract Documents.

. . . .

"2.6.15 The Architect shall interpret and decide matters concerning performance of the Owner and Contractor under the requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made with reasonable promptness and within any time limits agreed upon.

. . . .

"2.6.17 The Architect's decisions on matters relating to aesthetic effect shall be final if consistent with the intent expressed in the Contract Documents.

"2.6.18 The Architect shall render written decisions within a reasonable time on all claims, disputes or other matters in question between the Owner and the Contractor relating to the execution or progress of the Work as provided in the Contract documents.

"2.6.19. The Architect's decisions on claims, disputes or other matters, including those in question between the Owner and Contractor, except for those relating to aesthetic effect as provided in Subparagraph 2.6.17, shall be subject to *arbitration* as provided in this Agreement and in the Contract Documents.

. . . .

"7.1 Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to the Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association....

. . . .

"7.4 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

The "construction documents" included "AIA Document A201 1987 Edition General Conditions of the Contract for Construction." However, the form was altered when Contractor and Owner deleted "Article 4.5" entitled "Arbitration" from the "General Conditions" form. As a consequence, they removed from the "construction documents" all references to arbitration procedure, process, and time frames, as well as the language stating that the arbitration award would be "final." However, they left intact numerous references to "arbitration" in other parts of the "construction documents." With the foregoing explanation, we reproduce pertinent portions of the "general conditions" component of the "construction documents."

"4.2.13 The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

. . . .

"4.3.1 Definition. A Claim is a demand or assertion by one of the parties seeking, as a matter of right ... extension of time.... Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

"4.3.2 Decision of Architect. Claims ... shall be referred initially to the Architect for action as provided in Paragraph 4.4. *A decision by the Architect,* as provided in Subparagraph 4.4.4, *shall be required as a condition precedent to arbitration or litigation* of a claim between the Contractor and Owner as to all such matters arising prior to the date final payment is due, regardless of (1) whether such matters relate to execution and progress of the Work or (2) the extent to which the Work has been completed. The decision by the Architect in response to a claim shall not be a

condition precedent to arbitration or litigation in the event ... (2) the Architect has not received evidence or has failed to render a decision within agreed time limits, (3) the Architect has failed to take action required under Subparagraph 4.4.4 within 30 days after the Claim is made, (4) 45 days have passed after the Claim has been referred to the Architect or (5) the Claim relates to a mechanics lien.

"4.3.3   Time Limits on Claims.   Claims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice. . . .

     . . . .

"4.3.8.1 ... The Contractor's Claim [for an increase in the Contract Time] shall include an estimate of cost and of probable effect of delay on progress of the Work. . . .

"4.3.8.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time and could not have been reasonably anticipated, and that weather conditions had an adverse effect on scheduled construction.

     . . . .

"4.4.1   The Architect will review Claims and take one or more of the following preliminary actions within ten day of receipt of a Claim: (1) request additional supporting data from the claimant, (2) submit a schedule to the parties indicating when the Architect expects to take action, (3) reject the Claim in whole or in part, stating reasons for rejection, (4) recommend approval of the Claim by the other party, or (5) suggest a compromise. . . .

     . . . .

"4.4.3   If a Claim has not been resolved, the party making the Claim shall, within ten days after the Architect's preliminary response, take one or more of the following actions: (1) submit additional supporting data requested by the Architect, (2) modify the initial Claim or (3) notify the Architect that the initial Claim stands.

"4.4.4   If a Claim has not been resolved after consideration of the foregoing ..., the Architect will notify the parties in writing that the Architect's decision will be made within seven days, which decision shall be final and binding on the parties but *subject to arbitration*.   Upon expiration of such time period, the Architect will render to the parties the Architect's written decision relative to the Claim, including any change in the Contract Sum or Contract Time, or both. . . .

     . . . .

"8.3.1   If the Contractor is delayed at any time in progress of the Work by an act or neglect of the Owner or Architect ... or other causes beyond the Contractor's control, or by delay authorized by the Owner pending *arbitration,* or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine."

(emphasis added).

## DISCUSSION AND DECISION

*Point I: Contractor's Summary Judgment*

■   Owner's first point maintains that the trial court erred in granting summary judgment for Contractor on the issues of liquidated damages "on the basis that [Owner] was bound by the Architect's decision extending the contract completion date because genuine issues of fact exist precluding entry of summary judgment on this issue."   We agree.

■   Whether the "construction documents" and Architect/Owner contract empowered Architect to make a "final and binding" decision on extending the contract time obviously required a construction of the contracts in the first instance.   *See Schelle v. Mercantile Bancorporation, Inc.,* 741 S.W.2d 720, 725 (Mo.App.1987).   Of course, the construction of a contract is ordinarily a matter of law.   *See Strout Realty, Inc. v. Anderson,* 703 S.W.2d 549, 551 (Mo.App.1985).   "However, summary judgment is appropriate in

contract cases only when the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document." *Id.* at 551[1].

"[W]here the language of the [contract] is ambiguous, the propriety of a summary judgment is questionable. *National Merchandising Corp. v. McAlpin,* 440 S.W.2d 489, 494 (Mo.App.1969). In these instances, the [parties'] intent must be established by extrinsic evidence, *see e.g., Cure v. City of Jefferson,* 380 S.W.2d 305, 311 (Mo. 1964)...."

*Cooper v. Anschutz Uranium Corp.,* 625 S.W.2d 165, 167 (Mo.App.1981).

"[I]n a case where the parties disagree as to the meaning and effect of the contract, and parol evidence is required, a motion for summary judgment based on interpretation of the contract should be denied." *Signature Pool v. City of Manchester,* 743 S.W.2d 538 (Mo.App.1987).

Earlier in this opinion, we reproduced pertinent sections of the "construction documents" and the Architect/Owner contract. These sections cannot fairly be interpreted by resorting to the face of the instruments alone. Section 2.6.18 of the Architect/Owner contract says that the Architect must render written decisions within a reasonable time on all disputes between Owner and Contractor; yet, it is silent on whether Architect's decision would be final and binding. Other language in the Architect/Owner contract suggests that the only final and binding decisions that Architect can make are minor changes in the work not involving an extension of contract time, § 2.6.13, or decisions "relating to aesthetic effect," § 2.6.17. Section 2.6.19 states that any other decisions by Architect are subject to arbitration under procedures outlined in § 7.1. Section 7.1 says that the arbitrator's decision is final.

Similar provisions regarding Architect's decisions are found in the "construction documents." For instance, § 4.2.13 indicates that Architect's decision regarding "aesthetic effect" is final. Section 4.3.2 language which provides that Architect must make a decision "as a condition precedent to arbitration or litigation" suggests that Architect's decision on time extension is not intended to be bind-

ing and final. However, the prospect of a different interpretation is presented by § 4.4.4 when it states that Architect's "decision shall be final and binding on the parties *subject to arbitration;* " yet, Owner and Contractor deleted the arbitration section from the contract. When Contractor and Owner deleted "Article 4.5" entitled "Arbitration" from the "General Conditions" form, did they intend no arbitration or did they intend that there be arbitration but without the Article 4.5 language? If they intended no arbitration, then one plausible interpretation of § 4.4.4 is that the parties intended Architect's decisions to be final. Yet, such an interpretation conflicts with the language in § 4.2.13 and § 4.3.2 which indicates that only decisions relating to aesthetics were intended to be "final and binding." Likewise, such interpretation raises questions about what the parties intended in § 4.3.2, i.e., that Architect must make a decision "as a condition precedent to arbitration *or litigation.*" On the other hand, if the parties intended that arbitration of disputes should occur but without the procedure of Article 4.5, then it is clear that Architect's decisions were not final and binding as Contractor asserted.

We conclude that the contract language is susceptible of differing interpretations about whether Architect's decision on time extension was intended as "final and binding". The record fails to provide Contractor with the uncontradictory proof necessary to resolve the factual issue of intent in this summary judgment proceeding. Under the circumstances, parol evidence is essential to resolve the ambiguity in these contracts. When the resolution of an issue turns on the intentions of the parties, and parol evidence is necessary to show those intentions, a question of fact exists preventing summary judgment. *See Moore v. Bentrup,* 840 S.W.2d 295, 298[7] (Mo.App.1992). We conclude that Contractor failed to demonstrate, as a matter of law, that it was entitled to judgment, and therefore, summary judgment for Contractor on liquidated damages issues was not appropriate.

In reaching this conclusion, we do not ignore Contractor's arguments that a "binding decision of the architect" regarding time ex-

tension "was not a necessary element in the trial court's award of summary judgment" and that "Architect's decision was not the basis for the Trial Court's award of summary judgment." Continuing, Contractor asserts that "the obvious basis upon which the trial court entered it's [sic] award of summary judgment" was the trial court's recognition that there was no "genuine issue of fact as to the nature and number of extension days due to inclement weather and building permit delays, and that the contract ... clearly established [Contractor's] right to extension of the completion date as a result of said delays."

Such arguments are not supported by the record. First, the trial court's order/judgment does not state the basis for its entry of summary judgment; hence, nothing in the record supports what Contractor claims was the "the obvious basis" for the summary judgment. Second, the only theory advanced by Contractor to the trial court was that Owner was contractually bound by Architect's decisions regarding weather and permit delays absent any fraud or bad faith by Architect in making its decisions. The questions of law and the facts presented to the trial judge concerned Architect's *decisions* about weather claims and permit delay claims and whether Architect's *decisions* conclusively bound Owner. As we understand Contractor's argument on appeal, it now claims the evidence concerning Architect's *decisions* would be competent and uncontroverted evidence that in fact: (1) there were 53 days during the construction period when weather conditions were abnormal and could not have been reasonably anticipated; (2) such abnormal weather conditions had an adverse effect on scheduled construction; and (3) there were 13 days during the construction period when Branson's failure to issue a building permit adversely affected construction. We disagree.

■ This later proposition or theory was never presented to the trial court. Although Contractor attempts to argue this as a new theory on appeal, this court does not consider contentions not put before the trial court. *Northland Ins. Companies v. Russo*, 929 S.W.2d 930, 935 (Mo.App.1996). Addi-

tionally, Cooper's affidavit and Contractor's letter of April 28, 1994, to Architect provided facts about causes of delay that contradicted evidence that inclement weather or permit delay were the only causes hindering completion. Finally, Contractor itself adduced evidence which raised a factual issue about whether the weather was the cause of delay beyond the completion date. Such evidence was found in a document attached to Gabby's affidavit in which he stated that by January 12, 1994, Contractor was anticipating a May 15, 1994, completion date, "which excluded weather."

We remain persuaded that the judgment for Contractor on the issue of liquidated damages must be reversed.

*Point II: Architect's Summary Judgment*

■ In part, Owner's second point charges that summary judgment for Architect was inappropriate because a material fact issue existed as to whether Architect breached its contractual duty to act impartially and in good faith. We agree.

The "construction documents" provide that in resolving Owner/Contractor disputes, Architect must act impartially and in good faith. Section 4.2.12 states:

"When making such interpretations and decisions, the architect will endeavor to secure faithful performance by both owner and contractor, *will not show partiality to either* and *will not be liable* for results of interpretations or decisions so rendered *in good faith.*" (emphasis added).

The Architect/Owner contract places a contractual duty on Architect to make decisions regarding claims. §§ 2.6.15, 2.6.18. The term "claim" is defined in the "construction documents" as including a request for extension of time. § 4.3.1. The "construction documents" place responsibility for substantiating a claim on the party making the claim. § 4.3.1. Additionally, the "construction documents" prescribe time limits for the presentation of claims, set a time frame in which Architect is to act, and establish procedures for asserting those claims. §§ 4.3.3, 4.4.1, 4.4.3, and 4.4.4. Section 4.3.8.1 states that if Contractor makes a claim for increase in time, such claim shall include an estimate of

cost. Section 4.3.8.2 provides that if adverse weather conditions are the basis for an extension of time, the claim "shall be documented by data substantiating that weather conditions were abnormal for the period of time and could not have been reasonably anticipated...."

Architect's motion for summary judgment is devoid of evidence that Architect complied with § 4.4.1 by taking one or more of the "preliminary actions" listed in that section within ten days of receipt of the claim, nor does the record reflect that Architect required Contractor to substantiate its claim for time extensions. Specifically, the attachments to Architect's motion for summary judgment did not include an estimate of cost as required by § 4.3.8.1 nor did they contain "data substantiating that weather conditions were abnormal for the period and could not have been reasonably anticipated" as required by § 4.3.8.2. First, Architect issued a decision letter in November 1994, many months after time for contract administration had ceased. Second, Architect did not require Contractor to provide substantiating data as prescribed by the "construction documents." These actions raise genuine issues of fact regarding Architect's partiality and good faith.

Additional issues concerning Architect's partiality and lack of good faith were raised by Contractor's letter of April 28, 1994, to Architect and Architect's apparent refusal to address some of the claims presented in that letter. This four-page letter listed eleven "delays" that Contractor claimed affected the completion date of the project. Contractor's list included claims for weather and permit delay, but it also presented claims for delay that were potentially attributable to Architect. Yet, Architect's letter of November 4, 1994, never addressed nor decided Contractor's claims for delay for which Architect might have been responsible. Under the circumstances, Architect's selective decision-making raised genuine fact issues about its impartiality and good faith. Thus, the summary judgment for Architect was inappropriate.

In reaching the foregoing conclusion, we do not ignore Architect's heavy reliance on cases holding that where a contract entrusts the final determination of disputes to an architect or engineer, the decisions of such professionals are final and binding on owners and contractors in the absence of fraud or gross mistake. *See Public Water Supply Dist. v. Maryland Casualty Co.*, 478 S.W.2d 293, 296 (Mo.1972); *Myers v. Union Electric Light & Power Co.*, 334 Mo. 622, 66 S.W.2d 565, 569 (1933); *Southwest Eng'g Co. v. Reorganized Sch. Dist. R–9*, 434 S.W.2d 743, 748 (Mo.App.1968). Relying on these cases, Architect insists that Owner could not prevail on its breach of contract action since Owner had not stated a cause of action; hence, Architect would be entitled to summary judgment on this issue. According to Architect, a breach of contract action would not be available to Owner "because [Owner] must plead and prove that the architect acted in fraud, gross mistake, or bad faith." We disagree.

Under Point I, we found that these particular contracts were susceptible of differing interpretations about whether Architect's decision on time extension was intended to be "final and binding." Due to this ambiguity, it follows that the rule stated in *Public Water Supply Dist., Myers,* and *Southwest Eng'g* has no application to this case.

We remain persuaded that the summary judgment for Architect must be reversed.

MONTGOMERY, C.J., and PARRISH, J., concur.