Doris COSKY, Plaintiff–Respondent,

v.

**VANDALIA BUS LINES, INC.,**
Defendant–Appellant.

No. 21962.

Missouri Court of Appeals,
Southern District,
Division Two.

June 11, 1998.

---

Kevin T. Hoerner, Belleville, IL, Robert R. Paulson, Branson, for defendant-appellant.

Stuart H. King, William H. McDonald & Associates, Springfield, for plaintiff-respondent.

SHRUM, Judge.

In this breach of contract case, the trial court entered a summary judgment for Doris Cosky (Plaintiff) against Vandalia Bus Lines, Inc. (Defendant). The court awarded Plaintiff damages on her contract count and denied Defendant's motion for summary judgment. Defendant appeals. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

The subject contract concerns membership in Gray Line Sightseeing Association, Inc. (Gray Line). Accordingly, the following background about this organization is relevant.

Gray Line is a nonprofit corporation that promotes sightseeing, charter service, airport, and other transfer services for its members. Owners of transportation businesses comprise Gray Line's membership. Gray Line grants only one membership per geographical region. Also, Gray Line's bylaws provide that memberships cannot be sold or assigned without approval of Gray Line's board of directors.

Defendant was the Gray Line member for the St. Louis area when it applied to Gray Line in 1993 to be its Branson/Springfield member. Leon Streif, Defendant's C.E.O., filed the application for Defendant. Gray Line approved Defendant as its Branson/Springfield member at its semi-annual meeting held in September 1993. Minutes of Gray Line's September 24, 1993, membership committee meeting record that approval of Defendant's request for the Branson/Springfield membership was "contingent upon Mr. Streif agreeing to ... opening a garage and maintenance facility in Branson no later than April 1, 1994."

On August 18, 1994, Plaintiff and Defendant negotiated and signed the subject contract. By its terms Defendant "transferred its transportation operation—Branson/Springfield Division to [Plaintiff]." The contract price was $80,000. Although Plaintiff signed as an individual, the contract also identified Plaintiff as "owner of Branson Stage Line, Inc." In part, Plaintiff agreed that she would "become responsible and assume all expenses for the operation of [Gray Line Branson/Springfield,] effective Aug. 18 '94...." The contract also required that certain identified telephone numbers be assigned to Plaintiff. Another paragraph reads: "[T]his agreement is subject to the approval of [Plaintiff (Branson Stage Line, Inc.)] for Gray Line membership."

Plaintiff's uncontradicted deposition testimony established that, pursuant to the contract, she immediately began paying the monthly and quarterly fees due Gray Line. She paid the fees to Defendant and it forwarded the fees to Gray Line. Additionally, Plaintiff assumed the Gray Line Branson/Springfield Division's telephone numbers, yellow pages advertising, and the expense therefor beginning August 18, 1994.

In early 1995, Plaintiff and Defendant completed and submitted to Gray Line their respective sections of an application to transfer Defendant's Branson/Springfield Gray Line membership to Branson Stage Line, Inc., the firm owned by Plaintiff. Plaintiff also submitted to Gray Line a $5,000 check in payment of the transfer fee.

At its semi-annual meeting on May 1, 1995, Gray Line denied Plaintiff's and Defendant's joint application to transfer the Gray Line Branson/Springfield membership. However, in Plaintiff's affidavit in support of summary judgment, she asserts—without contradiction—that she was not notified of the denial. Consequently, Plaintiff continued to operate as if the transfer had been approved.

On December 18, 1995, Gray Line notified Defendant that it had declared the "Branson membership ... vacant" because Defendant had not opened "a garage and maintenance facility in Branson [by] April 1, 1994." Gray Line also charged Defendant with proceeding "with an unauthorized transfer of the Branson membership...."

In January 1996, Gray Line notified Plaintiff that Defendant no longer held the Branson/Springfield membership and suggested she apply for Gray Line membership, which

she did. After Plaintiff paid the required fees of $20,000, Gray Line approved Plaintiff's new membership application on April 28, 1996.

Plaintiff then filed a three-count petition seeking damages from Defendant. Count I alleged Defendant had breached the contract by not transferring its Gray Line membership to Plaintiff as agreed. Count II sounded in unjust enrichment. Count III alleged fraud. Defendant filed a counterclaim for breach of contract, alleging that it never received in full the consideration promised.

After some discovery, both parties filed motions for summary judgment, each alleging that the subject agreement "was a valid and enforceable contract under Missouri law." In part, Plaintiff claimed entitlement to summary judgment because Defendant failed to complete its obligation under the contract by failing to transfer its Springfield/Branson Gray Line membership to Plaintiff. Contrarily, Defendant insisted the "clear and unambiguous language" of the contract only required that Plaintiff be approved for Gray Line membership, not that Defendant's membership be transferred. Defendant argued, therefore, that Plaintiff's contractual obligations "ripened" and Defendant's obligations were fulfilled when, based on her own application, Plaintiff was approved for Gray Line membership on April 28, 1996.

The trial court granted Plaintiff's motion for summary judgment on Count I (the breach of contract count), awarded her damages of $102,310.14, denied Defendant's motion for summary judgment, and ruled in favor of Plaintiff on Defendant's counterclaim. This appeal followed.[1]

## DISCUSSION AND DECISION

### Summary Judgment and Scope of Review

Summary judgment is mandated "if a motion for summary judgment and response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c). In a contract case, summary judgment is proper when the meaning of the questioned part of the contract is so obvious that it can be resolved from the four corners of the document. *MECO Systems, Inc. v. Dancing Bear Entertainment, Inc.*, 948 S.W.2d 185, 190–91[3] (Mo.App.1997). Always, "[t]he key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 380[12] (Mo.banc 1993).

Review of an order granting summary judgment is essentially de novo. *Id.* at 376[4]. In reviewing summary judgments, appellate courts examine the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376[1].

### Point I:

Defendant's first point has multiple parts. Initially, Defendant argues that the trial court erred when it entered a summary judgment for Plaintiff and denied Defendant's motion for summary judgment "[b]ecause plaintiff was granted the Branson/Springfield Gray Line membership, as required by the clear, unambiguous language of the contract."

In developing this point Defendant again claims that the contract language is "clear and unambiguous" and notes that the contract required approval of Plaintiff for Gray Line membership. Continuing, Defendant points out that the contract "did not place any limitations on the method of approval." Consequently, Defendant argues that Plaintiff's application for membership which was approved in April 1996 satisfied the contract's requirement for Plaintiff to be approved for Gray Line membership. Defendant would have us hold, therefore, that Defendant was entitled to summary judg-

---

1. Defendant has not in this appeal challenged the trial court's assessment of damages, and therefore, any question about the correctness of the damage award is not before this court. *See In re Marriage of Jirik*, 783 S.W.2d 177, 180 n. 5 (Mo.App.1990); *Massie v. Benton*, 678 S.W.2d 445, 447 (Mo.App.1984). Appellate courts are not to serve as advocates for any party on appeal. *Thummel v. King*, 570 S.W.2d 679, 686 (Mo.banc 1978). We caution, however, that this case is not instructive on, nor is it authority for the proper measure of damages for breach of contract.

ment "based on the simple fact" that Plaintiff was ultimately awarded Gray Line membership for the Branson/Springfield area. We disagree.

While both parties assert that the contract was unambiguous, each ascribes different meaning to the contract. Plaintiff insists that this contract obligated Defendant to assign its Branson/Springfield membership in Gray Line; consequently Defendant breached the contract when it "[d]id not accomplish the transfer" of such membership to Plaintiff. As we have already explained, Defendant asserts that under the contract any approval of Plaintiff for Gray Line membership fulfilled its contractual obligation.

■ We note that a contract is not ambiguous merely because the parties disagree over its meaning. *Central City Ltd. Partnership v. United Postal Sav. Ass'n*, 903 S.W.2d 179, 182[5] (Mo.App.1995). In deciding if a contract is ambiguous, the whole instrument must be considered, giving effect to every part of it when fairly and reasonably possible. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264[7] (Mo.banc 1973); *McIntyre v. McIntyre*, 377 S.W.2d 421, 425[4] (Mo.1964). The cardinal rule in the interpretation of a contract is to determine the intention of the parties and to give effect to that intention. *Edgewater Health Care, Inc. v. Health Systems Management, Inc.*, 752 S.W.2d 860, 865 (Mo.App. 1988). When no ambiguity exists, the intent of the parties is to be gathered from the contract alone. *Id.* at 865[1]. " 'Presumptively, the intent of the parties to a contract is expressed by the natural and ordinary meaning of the language referable to it ....' " (citations omitted). *J.E. Hathman*, 491 S.W.2d at 264[9].

Defendant concedes in its brief that the parties entered into this contract knowing that Gray Line "membership [for Plaintiff] would not be possible without [Defendant's] participation and/or acquiescence with her efforts, because only one membership could exist for the Branson/Springfield area." This concession is not surprising since the parties' intent at the time they signed this contract is clearly discernable from the language "sell the [Gray Line Branson/Spring-

field] Division." The term "sell" means "[t]o *transfer* title or possession of property to another ... for [a price]." BLACK'S LAW DICTIONARY 1360 (6th ed.1990); WEBSTER'S NEW INTERNATIONAL DICTIONARY 2061–62 (3d ed.1976). Giving the language in this contract its natural and ordinary meaning reveals that the parties intended that Defendant would sell (meaning *transfer* ) its Gray Line membership to Plaintiff effective August 18, 1994.

■ The "approval" paragraph of this contact is not contradictory to that intent. It is simply silent on the issue of whether Defendant's contract obligation to sell its membership could be fulfilled by some means other than transfer. " 'Even seeming contradictions must be harmonized away if that be reasonably possible.' " (citations omitted). *J.E. Hathman*, 491 S.W.2d at 264[9].

■ In summary, the contract itself shows the parties' intent that Defendant was to transfer its Branson/Springfield Gray Line membership to Plaintiff as part of its contractual obligation. Defendant failed to fulfill that obligation. Plaintiff's subsequent acquisition of membership directly from Gray Line did not fulfill Defendant's contractual obligation. Defendant's arguments to the contrary lack merit. This part of Point I is denied.

Next, Defendant assigns the following as a reason the trial court erred when it granted Plaintiff's summary judgment motion and denied Defendant's motion:

"B. The requirement in the contract that execution of the terms and conditions thereof was subject to [Plaintiff] being approved for membership was not a condition precedent, because the condition was not impossible, but merely required the action of a third party to approve her membership."

To support its argument, Defendant relies heavily upon *Juengel Constr. Co., Inc. v. Mt. Etna, Inc.*, 622 S.W.2d 510 (Mo.App.1981). *Juengel* discusses contract conditions that render a contract enforceable and those that make a contract unenforceable.

"A condition precedent is an act or event that must be performed or occur, after the contract has been formed, before the contract becomes effective. Conditions precedent are disfavored, and contract provisions are construed as such only if unambiguous language so requires or they arise by necessary implication. The requirement in a contract of a third party's acquiescence or the performance of some act by him may or may not be a condition precedent to enforcement of the contract. On the one hand, if the fulfillment of the contract depends on the act or consent of a third party, the contract is unenforceable until the third party so acts or consents. However, if a party to a contract unconditionally undertakes to perform an act that is not impossible, but merely requires a third party to acquiesce or perform a preceding act, the party's performance is not deemed to be conditional on the third party's acquiescence or performance. *In the latter situation, inability to secure the necessary permission or acts of the third party does not excuse performance of the contract.*"

*Id.* at 513[1–5]. (emphasis supplied). (citations omitted).

Apparently Defendant misinterprets *Juengel.* We perceive this because Defendant's arguments support what the trial court did rather than show that it erred. For instance, Defendant asserts that the requirement that Plaintiff be approved for membership is not a condition precedent to enforcement of the contract and that the contract was valid and enforceable. Next, Defendant insists that Plaintiff and Defendant "intended the contract to be effective by commencing performance." Continuing, Defendant says that "[o]n August 18, 1994, [Defendant] agreed to transfer its Gray Line Branson/Springfield Division to [Plaintiff]; and [Plaintiff] agreed to transfer possession and/or title of three vehicles to [Defendant]." By such arguments, Defendant in effect admits that it unconditionally undertook to obtain transfer of its Branson/Springfield membership in Gray Line and that it did not deem its performance to be conditional on Gray Line's acquiescence or performance.

■ Defendant contends that "[p]erformance by [Defendant] was accomplished [on August 18, 1994]." Defendant further asserts that the "exclusive rights to the Branson/Springfield membership were transferred to [Plaintiff]. . . ." These arguments are simply not supported by the record. Defendant did not transfer its Branson/Springfield membership in Gray Line to Plaintiff on August 18, 1994, or at any other time; consequently, "performance by [Defendant]" of its obligation to transfer Branson/Springfield Gray Line membership to Plaintiff was never accomplished. Defendant's apparent inability to transfer the subject membership to Plaintiff did not release Defendant from its contractual obligation to transfer. *See Juengel,* 622 S.W.2d at 513[5]; *Barcroft Woods, Inc. v. Francis,* 201 Va. 405, 111 S.E.2d 512, 516 (1959).

Accordingly, we conclude that the trial court did not err when it found that Defendant had breached the subject contract. We deny this part of Defendant's first point.

Finally, Defendant's first point claims that the summary judgment rulings were erroneous because, "[e]ven if [Plaintiff's] approval for the Gray Line membership is found to be a condition precedent, Gray Line's denial of [Plaintiff's] transfer application was not binding on [Defendant] because Gray Line acted arbitrarily, capriciously and in bad faith in denying the transfer application." This argument fails because we have not found that Gray Line's approval of Plaintiff for membership was a "condition precedent." We have found that Defendant absolutely promised to transfer its Gray Line Branson/Springfield membership, but broke that promise.

Further, the theory that Gray Line acted arbitrarily, capriciously, and in bad faith in denying the application for membership transfer was never presented to the trial court. Although Defendant attempts to argue this as a new theory on appeal, this court does not consider contentions not put before the trial court. *MECO,* 948 S.W.2d at 192[5] (citing *Northland Ins. Companies v. Russo,* 929 S.W.2d 930, 935 (Mo.App.1996)). Point I is denied.

### Point II:

We reproduce Defendant's second point relied on.

"The trial court erred in granting [Plaintiff's] motion for summary judgment because [Plaintiff] failed to meet her burden in establishing a right to summary judgment.

"A. Summary judgment requires that the record be viewed in a light most favorable to the non-moving party, and [Plaintiff did not meet] her burden of establishing the right to summary judgment as a matter of law, on the record submitted.

"B. A 'genuine dispute' exist[s], for the purpose of summary judgment, where the record contains competent material that evidence of plausible, but contradictory, accounts of essential facts exist."

In her brief, Plaintiff attacks this point on procedural grounds, arguing that it does not comply with the "wherein and why" requirements of Rule 84.04(d). We agree.

Rule 84.04(d) requires an appellant to state *wherein* and *why* a challenged action or ruling is claimed to be erroneous. Also, Rule 84.04(d) provides that "[s]etting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule."

■ Compliance with Rule 84.04(d) is discussed in detail in *Thummel*, 570 S.W.2d 679. The three components of a point relied on have been succinctly stated as:

"(1) a concise statement of the challenged ruling of the trial court,

(2) the rule of law which the court should have applied (the *why* of Rule 84.04(d)), and

(3) the evidentiary basis upon which the asserted rule is applicable (the *wherein* of Rule 84.04(d))."

*Estate of Goslee*, 807 S.W.2d 552, 556 (Mo. App.1991). A point relied on should advise the court (and the opposing party) of the "way in which the trial court incorrectly applied [controlling] principles [of law] or misconstrued the facts." *State ex rel. Mayfield v. City of Joplin*, 485 S.W.2d 473, 475[3] (Mo.App.1972).

■ Defendant's second point fails to satisfy the requirements of Rule 84.04(d). As written, the point merely tracks the standard for granting summary judgment and is too general to raise an issue on appeal. *McCormack v. Maplewood–Richmond Heights*, 935 S.W.2d 703, 706 (Mo.App.1996); Rule 84.04(d). The contentions are merely abstract statements and do not state wherein or why material facts existed that would make summary judgment improper. *See M & D. Enterprises, Inc. v. Wolff*, 923 S.W.2d 389, 400[19] (Mo.App.1996).

■ A point relied on that does not comply with Rule 84.04(d) preserves nothing for appeal. *Id.*; Rule 84.13(a). Despite the infirmities in the point relied on, we may look to the argument portion of the brief to decide if there was plain error that would allow relief under Rule 84.13(c). *Estate of Goslee*, 807 S.W.2d at 556. Here, however, Defendant's argument does not shed any light on the basis for Defendant's claim of error and fails to remedy the deficiency in the point relied on. *Id.* Plaintiff never answered Defendant's second point arguments other than to challenge the entire point as deficient. From this lack of response, we presume Plaintiff was unable to understand Defendant's arguments well enough to respond. *Compare Scott v. Steelman*, 953 S.W.2d 147, 149 (Mo.App.1997).

■ Plaintiff in her brief details the deficiencies in Defendant's second point relied on. Yet, in its reply, Defendant denies the deficiencies, makes no effort to correct the problem, and does not request plain error review. Under the circumstances, we deem the point abandoned. *Estate of Goslee*, 807 S.W.2d at 556.

The judgment is affirmed.

MONTGOMERY, C.J. and BARNEY, J., concur.