**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff–Appellant,**

v.

**Randy CRAWFORD, Defendant–Respondent.**

**No. 23883.**

Missouri Court of Appeals, Southern District, Division One.

July 23, 2001.

Nelson L. Mitten, Riezman Berger, P.C., St. Louis, for appellant.

W. Edward Reeves, Ward & Reeves, Caruthersville, for respondent.

SHRUM, Judge.

In this replevin lawsuit, General Motors Acceptance Corporation ("GMAC") alleged it was entitled to recover possession of a motor vehicle from Randy Crawford ("Defendant"). GMAC alleged its possessory right arose when Delia Thies ("Owner") did not make installment payments, thus triggering GMAC's right to possession per contract documents. Defendant, a tow truck operator, defended on the ground he had a lien entitling him to retain possession until he was paid reasonable charges for towing and storage of the vehicle. The trial court entered judgment for Defendant, and GMAC appeals. We affirm.

Defendant owns a vehicle towing business in Hayti, Missouri. On November 29, 1999, a highway patrolman asked Defendant to tow a Chevrolet pickup truck from a highway location to his shop. Apparently this occurred after Owner had been arrested.[1] In conversations with GMAC employees in February and March 2000, Defendant offered to let GMAC pick up the vehicle "for just storage," but "they weren't interested in coming and picking it up" on those terms. Defendant has stored the truck at his business location since that time.

On April 14, 2000, GMAC filed this replevin suit seeking possession of the truck. GMAC alleged it was entitled to possession of the truck because it had a perfected security interest therein, and Owner had not made installment payments as agreed. To prove its perfected security interest, GMAC put in evidence a retail installment sale contract signed by Owner and a certificate of title for the truck issued by the state of Texas on October 7, 1999. GMAC is listed as the first lienholder on the title. The court entered judgment for Defendant, and this appeal followed.

■ This being a court-tried case, our review is governed by the well-known principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), which interprets what is now Rule 84.13(d).[2] *Tower Properties Co. v. Allen*, 33 S.W.3d 684, 687 (Mo.App.2000). We must affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32[1]. We

---

1. Presumably, the owner was arrested for a drug related offense(s) because Defendant was contacted by the Highway Patrol to tow the truck and "remove dope from the gas tank." The Highway Patrol can authorize a vehicle towing when an officer arrests the driver for an alleged offense and takes that person into custody. § 304.155.1(5), RSMo (2000).

2. All rule references are to Supreme Court Rules (2001) unless otherwise indicated.

view the evidence in the light most favorable to the prevailing party, giving that party the benefit of all reasonable inferences, disregarding the contrary evidence and inferences. *Bach v. McGrath,* 982 S.W.2d 734, 735 (Mo.App.1998). The trial court judgment is presumed correct. *Delaney v. Gibson,* 639 S.W.2d 601, 604[4] (Mo.banc 1982). We will affirm this judgment under any reasonable theory supported by the evidence. *Tower Properties,* 33 S.W.3d at 688[8].

Replevin is a possessory action to obtain from the defendant property that he or she possesses. *Ferrell Mobile Homes, Inc. v. Holloway,* 954 S.W.2d 712, 714[1] (Mo.App.1997). The thrust of a replevin action is to test a plaintiff's right to possession of chattels and the wrongful detention thereof by a defendant; therefore, it is necessary to weigh the plaintiff's right against that of the defendant. *Id.* at 714[2]. In this case, it was incumbent upon GMAC to prove the immediate right to possession of the truck at the time the suit was filed, and that Defendant was then wrongfully detaining the same. *Id.* at 714[3]. As presented, the question here is whether Defendant had a lien, and if so, was his lien superior to that of GMAC's security interest.

At trial, Defendant testified he towed and stored the truck at the request of a highway patrolman and had otherwise "done everything ... I was told ... by the State of Missouri through this title abandoning property pamphlet from the State ... that is issued to all towing companies." Defendant, acting *pro se* at trial, never put the referenced "pamphlet" into evidence and never specifically cited §§ 304.155 and 304.156 at trial as the basis for his claimed lien on Owner's truck.[3] Even so, the record clearly reflects the trial court and

GMAC understood those statutes were the basis for Defendant's claim of lien superiority.

In pertinent part, § 304.155 provides:

"1. Any law enforcement officer within the officer's jurisdiction ... may authorize a towing company to remove to a place of safety:

. . . .

"(5) Any abandoned property for which the person operating such property is arrested for an alleged offense for which the officer is required to take the person into custody and where such person is unable to arrange for the property's timely removal;

. . . .

"8. The owner of such abandoned property, or the holder of a valid security interest of record, may reclaim it from the towing company upon proof of ownership or valid security interest of record and payment of all reasonable charges for the towing and storage of the abandoned property.

"9. Any person who removes abandoned property at the direction of a law enforcement officer ... shall have a lien for all reasonable charges for the towing and storage of the abandoned property until possession of the abandoned property is voluntarily relinquished to the owner of the abandoned property or to the holder of a valid security interest of record.... Such lien shall be enforced in the manner provided under section 304.156."

At trial, GMAC offered no evidence to contradict Defendant's claim that he towed Owner's truck, took possession of it in November 1999, and had possession thereof when GMAC filed suit in April 2000. GMAC's position was that Defendant did not have a valid lien or other interest in

---

**3.** All statutory references are to RSMo 2000, unless otherwise indicated.

the truck because he did not give GMAC the notice prescribed by § 304.156.1.[4]

Defendant's testimony concerning compliance with the lien enforcement statute, § 304.156, was that he "notified ... the owner of the vehicle ... by certified mail" as he was directed to do by the abandoned property "pamphlet." In that regard, Defendant testified he sent the required notice on February 3, 2000, and directed it to Owner at the address provided him, i.e., "4327 West 169th Street in Lawndale, California." Furthermore, Defendant testified Owner signed for the certified mail notice on February 8, 2000. Defendant admitted, however, he never "personally" contacted the Texas Department of Transportation "to try to determine who was the lienholder on the vehicle" and he never sent GMAC a notice as required by § 304.156. His explanation was that he "did not know GMAC had any interest in the vehicle[;]" that the Highway Patrol learned on November 29, 1999, the truck was titled and licensed in Texas; that the patrol had provided the Missouri Department of Revenue with that information; and he (Defendant) was repeatedly "advised ... there was no lienholder."

■ On appeal, GMAC's brief contains one point relied on and is as follows:

"The trial court erred when it entered judgment in favor of [Defendant] and against GMAC for possession of the Pickup because GMAC had a valid security interest in the Pickup and was entitled to possession due to default of the person making the note, and [Defendant] did not have a valid lien or other interest in the Pickup superior to that of GMAC."

In his brief, Defendant notes this point relied on does not comport "with the requirements of Rule 84.04(d)(1) as it does not identify the concise legal reasons for the claim of reversible error nor explain how those legal reasons support the claim of error." Rule 84.04(d) provides that each point relied on shall "(A) identify the trial court ruling or action the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." It is not enough for a point relied on simply to say that a trial court was wrong without citing some evidence or testimony that gives support to such conclusion. *Estate of Phillips v. Matney*, 40 S.W.3d 15, 18[6] (Mo.App. 2001).

Here, GMAC's point relied on mentions its security interest and Owner's default, but never cites evidence or explains, in the context of the case, its conclusory remark

4. In pertinent part, § 304.156.1 provides:
 "1. Within five days of receipt of the crime inquiry and inspection report under section 304.155 ..., the *director* of revenue shall search the records of the department of revenue, *or initiate an inquiry with another state, if the evidence presented indicated the abandoned property was registered or titled in another state,* to determine the name and address of the owner and lienholder, if any. *After ascertaining the name and address of the* owner and *lienholder, if any, the department shall,* within fifteen working days, *notify the towing company. Any towing company* which comes into possession of abandoned property pursuant to section 304.155 ... and *who claims a lien* for recovering, towing or storing abandoned property *shall give notice* to the title owner and *to all persons claiming a lien thereon, as disclosed by the records* of the department of revenue or *of a corresponding agency in any other state. The towing company shall notify* the owner and *any lienholder* within ten business days of the date of mailing indicated on the notice sent by the department of revenue, *by certified mail, return receipt requested.* The notice shall contain ...." (Emphasis added.)

that Defendant "did not have a valid lien or other interest in the Pickup superior to that of GMAC." Defendant is correct in his assessment that GMAC's point does not comply with Rule 84.04(d)(1). Defendant is also correct when he points out that GMAC's brief fails to comply with Rule 84.04(d)(5) in that, following its point relied on, GMAC never listed *any* authority upon which it relied to support its point. Such failure is another breach of mandated briefing practice. Finally, Defendant notes—correctly so—that the argument section of GMAC's brief makes no specific references to the transcript, thus violating Rule 84.04(i).

 Aside from questions about a trial court's jurisdiction over subject matter and questions regarding the sufficiency of pleadings to state a claim or a defense, "allegations of error ... not properly briefed ... shall not be considered in any civil appeal." Rule 84.13(a). Accordingly, a point relied on which does not comply with Rule 84.04(d) " 'preserves nothing for appellate review[,]' " *In re Swearingen*, 42 S.W.3d 741, 747 (Mo.App.2001) (citations omitted), and "constitutes grounds for dismissal." *Estate of Phillips*, 40 S.W.3d at 18[7]. The requirement that "the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts." *Thummel v. King*, 570 S.W.2d 679, 686[6] (Mo.banc 1978). To the contrary, the Rule 84.04 requirements have "sound policy" reasons that are fully explained in *Thummel* and need not be repeated here.

 When a point relied on preserves nothing for appellate review because of noncompliance with Rule 84.04 (as in this case), appellate courts may nevertheless look to the argument portion of the brief to decide if there was plain error which would allow relief under Rule 84.13(c).[5] *See Cosky v. Vandalia Bus Lines, Inc.*, 970 S.W.2d 861, 867[11] (Mo.App.1998). Turning to the argument part of GMAC's brief, we find only a limited analysis of § 304.156 and no analysis of §§ 304.155 or 304.158. The argument section of GMAC's brief is thus limited in scope even though §§ 304.155–.158 are interrelated and, in many instances, contain confusing and conflicting language.

The following is the relevant part of the argument section in GMAC's brief:

"[Defendant's] claim for a lien must fail because he did not comply with the strict statutory provisions governing the establishment of a lien for storage charges under the statute. Section 304.156.2 expressly states that a towing company may assess *storage charges* only for the period of time the towing company complies with the procedural requirements of §§ 304.155–304.158. Under these provisions, the towing company must give notice, by certified mail, return receipt requested, to the title holder and lien holder. *See* 304.156.1 .... Furthermore, the towing company must make a good faith effort to determine the owner and the lienholder, including checking the vehicle for license plate number and registration number to determine the state of registration, and must inform the Director of Revenue of such information. RSMo 304.156.3 ....

"The clear testimony in this case is that [Defendant] failed to comply with these requirements. Accordingly, [Defendant] cannot assess storage charges

---

**5.** Rule 84.13(c) provides: "(c) Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

for any period of time prior to his full compliance with these statutory requirements. Having failed to comply, [Defendant] cannot assess such *storage* charges and, at a minimum, does not have a lien superior to that of GMAC for such charges. The trial court therefore erred by not entering judgment for GMAC, and against [Defendant] for possession of the Pickup." (Emphasis added.)

■ Significantly, GMAC's argument only mentions the storage lien, never mentions § 304.155, and ignores the towing lien. No doubt GMAC's failure to address the towing lien issue stems from the fact that § 304.156.2 only prescribes forfeiture of *storage charges* as the penalty for noncompliance with the procedural requirements of §§ 304.155–158.[6] Forfeiture of towing charges for noncompliance with procedural requirements *is not* a penalty imposed by § 304.156.2. By wholly ignoring the towing lien afforded Defendant by § 304.155.9, GMAC has abandoned any claim that the trial court erred when it implicitly found Defendant had a lien for towing and that such lien was superior to GMAC's security interest lien.

Moreover, storage charges are only forfeited under § 304.156.2 for "the time in which the towing company [fails to comply] with the procedural requirements of section 304.155 to 304.158." Even if Defendant failed to comply with the procedural requirement of § 304.156.1 by not giving

GMAC the prescribed written notice "within ten days of the date of mailing indicated on the notice sent by the department of revenue[,]"—a finding we need not and do not make—such procedural failure would only affect Defendant's entitlement to reasonable storage charges accruing *after* GMAC became entitled to such notice.

■ This suit is not about the reasonableness or amount of Defendant's towing or storage charges, nor does it involve whether Defendant could enforce his lien via § 304.156. The only issue is possession. A lien created pursuant to § 304.155, regardless of the amount or the means of collection, takes precedence over a prior security interest.[7] *See* § 304.155.9 (lien exists *until* towing company voluntarily relinquishes possession); *General Motors Acceptance Corporation v. City of St. Louis*, 663 S.W.2d 408, 409 (Mo.App.1983) (recognizing 1978 version of § 304.155 with substantially similar language as current version gave a superior right to possession until the holder of a valid security interest paid towing and storage charges).

■ The evidence here established that Defendant towed the truck and stored it at his place of business at the request of a highway patrolman after he had arrested Owner. The only "procedural" duty imposed on Defendant by § 304.155 is found in § 304.155.6.[8] Evidence existed from

---

6. Section 304.156.2 provides:

"2. A towing company may only assess reasonable charges for abandoned property towed *without the consent of the owner.* Reasonable storage charges shall not exceed the charges for vehicles which have been towed with the consent of the owner on a negotiated basis. Storage charges may be assessed only for the time in which the towing company complies with the procedural requirements of sections 304.155 to 304.158."

7. Plaintiff concedes as much in its reply brief wherein it states if Defendant is found to have a valid lien then Plaintiff would be required to tender payment before obtaining possession.

8. In pertinent part, § 304.155.6 provides:

"6. . . . If the abandoned property is not claimed within ten working days of the towing, the law enforcement agency shall submit a crime inquiry and inspection report to the director of revenue. A towing company in possession of abandoned prop-

which the court could have found Defendant fulfilled his § 304.155.6 procedural duty by reporting that he still had the vehicle after ten working days from the towing date. Based on evidence that Defendant towed and stored the truck and complied with § 304.155.6, the trial court could have found a lien against the truck arose in favor of Defendant for towing and, at a minimum, for storage until his obligation to give the § 304.156.1 notice arose. Since Defendant's towing and storage lien—whatever the amount—was superior to GMAC's security interest lien, the trial court did not err, under the plain error standard or otherwise, when it implicitly found Defendant had the superior right to possession of Owner's truck and denied GMAC's replevin attempt.[9]

The judgment is affirmed.

PARRISH, P.J. and MONTGOMERY, J., concur.

erty after ten working days shall *report such fact to the law enforcement agency* with which the crime inquiry and inspection report was filed." (Emphasis added.)

9. We do not address issues of whether GMAC had actual notice that Defendant had the truck, or, if so, whether the notice was timely. Moreover, we do not address whether actual notice, otherwise timely, would satisfy the notice requirements of § 304.156. Many other potential issues are unresolved because of the state of the record and because they were not

briefed. For instance, did Director initiate an inquiry with the state of Texas, as mandated by § 304.156.1, to determine if there was a lienholder? If so, was the result of that inquiry reported to Defendant as required by § 304.156.1? If Director performed these duties, was Defendant entitled to rely on Director's report concerning the existence or nonexistence of a lienholder? This list of issues is not exhaustive, but illustrates the complexity of these statutes and the necessity that there be a complete record when statutes are implicated.